**BLUE CROSS & BLUE SHIELD OF RHODE ISLAND**

v.

**Beverly E. NAJARIAN, Director of the Department of Administration, in her official capacity as the Chief Purchasing Officer for the State of Rhode Island and Providence Plantations.**

No. 2005–336–A.

Supreme Court of Rhode Island.

Dec. 18, 2006.

Steven E. Snow, Esq., Providence, for Plaintiff.

William M. Dolan, III, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The plaintiff, Blue Cross & Blue Shield of Rhode Island (plaintiff), appeals from an order of the Superior Court awarding attorneys' fees to defendant, Beverly E. Najarian (Najarian), director of the Department of Administration, in her official capacity as the chief purchasing officer for the State of Rhode Island (defendant or state). The motion justice awarded attorneys' fees to the defendant based on her interpretation of this Court's decision in *Truk Away of Rhode Island, Inc. v. Macera Bros. of Cranston, Inc.*, 643 A.2d 811 (R.I.1994) (*Truk Away*), which she believed required the award of attorneys' fees to prevailing parties if an injunction wrongfully was issued in relation to a public procurement contract. For the reasons that follow, we vacate the Superior Court's award of attorneys' fees.

### I

### Facts and Travel

This is the second appeal concerning the controversy between plaintiff and defendant and the bid solicitation process for the prized three-year health insurance contract with the State of Rhode Island to provide coverage to approximately 52,000 state employees, retirees and eligible dependants. A detailed recitation of the facts surrounding the bidding process and

plaintiff's bid protest is reported in *Blue Cross & Blue Shield of Rhode Island v. Najarian,* 865 A.2d 1074 (R.I.2005) (*Blue Cross I* ). We repeat only those facts necessary to the present appeal.

In July 2004, Najarian sought bids to provide the health care coverage offered by the state to its employees and retirees. The plaintiff and UnitedHealthcare (United) were the only companies to submit bids by the deadline and, after scoring and analysis, it was determined that United's bid was in the State's best interest. Najarian tentatively awarded the contract to United on October 7, 2004.

The plaintiff filed a bid protest with Najarian in October 2004, which was rejected. The plaintiff then filed a complaint in the Superior Court seeking to enjoin the state from executing the health insurance contract with United and to require that the state resolicit bids, which the court granted. Pursuant to Rule 65(c) of the Superior Court Rules of Civil Procedure, the trial justice ordered plaintiff to provide security in the form of bonds for defendant for $663,000 and for United for $337,000. The defendant and United timely filed appeals to this Court and, on February 3, 2005, we issued a decision vacating the injunction and permitting the state to implement the contract as originally awarded to United. *Blue Cross I,* 865 A.2d at 1091.

On July 12, 2005, defendant filed a motion seeking $324,539.69 in attorneys' fees and costs incurred as a result of its defense against the underlying injunction and its successful appeal to this Court. Neither in this motion nor in the accompanying memorandum of law did defendant assert that it had been damaged or seek to charge the security for damages sustained in connection with plaintiff's challenge to the public contract bid.

On August 31, 2005, after a hearing on defendant's motion, the motion justice issued an order awarding defendant $277,953 in attorneys' fees and $34,585.44 in costs. At the hearing, the motion justice explained that her decision to award attorneys' fees was based entirely upon her reading and understanding of this Court's opinion in *Truk Away,* and not on any misconduct or unethical behavior on the part of plaintiff. The motion justice concluded that *Truk Away* required her to make whole the wrongfully enjoined party by awarding attorneys' fees and costs.

On September 14, 2005, plaintiff filed in the Superior Court a motion to stay the order awarding attorneys' fees and costs, which was granted on September 16, 2005, pending plaintiff's appeal to this Court. In her ruling granting plaintiff's motion to stay, the motion justice reiterated her belief that the spirit of *Truk Away* mandated an award of attorneys' fees to defendant in this case, and that her ruling was not based on any statutory or contractual authority or motivated by any unethical behavior by plaintiff.[1] The plaintiff timely

---

1. Specifically, the motion justice stated, in relevant part:

"Historically attorneys' fees have been awarded where a contract between the parties provides for the award of attorneys' fees. Attorneys' fees have been awarded by a statute that provides for attorneys' fees so the successful party's attorneys' fees may be awarded where the conduct of the losing party is such that such an award would be deemed appropriate.

"This case is unique because none of those elements are present. My award of attorneys' fees in this case was based upon my reading of applicable case law, in particular the case of *Truk Away.* What I glean from that case was that the Rhode Island Supreme Court wants to discourage claims for injunctive relief by losing bidders for public contracts.

" * * *

"In this case the Supreme Court decision is silent on the issue of attorneys' fees,

filed a notice of appeal on September 16, 2005.

## II

## Analysis

On appeal, plaintiff asserts that the motion justice erred in interpreting *Truk Away* as mandating an award of attorneys' fees to defendant. In addition, plaintiff argues that the shifting of attorneys' fees in this case is contrary to the public interest.[2] Because we agree that *Truk Away* does not require an award of attorneys' fees to a prevailing party wrongfully enjoined in the context of a public contract bid, we need not address plaintiff's public policy argument.

### A

### Standard of Review

■ The issue of whether there exists a *basis* for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is *de novo*. *See Richard v. Richard*, 900 A.2d 1170, 1174 (R.I.2006). In the instant case, we are called upon to review the motion justice's

reading of *Truk Away* as requiring an award of attorneys' fees. This is a quintessential *legal* issue.

Only if it is determined that there is such a basis, then this Court will review a motion justice's actual award of attorneys' fees for an abuse of discretion. *Kells v. Town of Lincoln*, 874 A.2d 204, 214 (R.I. 2005).

### B

### Raise or Waive

■ Before proceeding to the merits of plaintiff's appeal, we first must address defendant's contention that plaintiff is precluded from contesting the award of attorneys' fees because plaintiff failed to preserve these issues for our review when it did not object to the inclusion of attorneys' fees in the scope of the bond at the time the bond was issued, or during its first appeal to this Court. The defendant's argument in this regard strikes us as being legalistic craftiness and somewhat frivolous, and we reject it.

Immediately after defendant filed her motion for attorneys' fees, plaintiff both filed an objection to defendant's motion

silent. On one hand it might have been argued that the Supreme Court, had they wished to add attorneys' fees as a remedy for the State, that they would have done so in their decision. On the other hand, I think that the spirit of the *Truk Away* case, if not the letter of *Truk Away*, suggests that the Supreme Court is indeed directing Superior Court justices to make the prevailing parties whole in the event that the injunction was wrongfully issued irrespective of the existence of the statute concerning attorneys' fees, irrespective of a contract that would call for attorneys' fees and irrespective of the type of conduct on the part of the plaintiff that would otherwise warrant an award of attorneys' fees.

"In other words, when I read *Truk Away*, I inferred from that decision that even though the Supreme Court in the *Blue Cross* case did not award attorneys' fees

that it was the Supreme Court's position that in the event that it is later determined that an injunction was wrongfully issued that attorneys' fees plus any damages be awarded."

2. The plaintiff also argues that the motion justice would have erred had she used her inherent power to award attorneys' fees in this case. It is clear from the motion justice's ruling on defendant's motion seeking attorneys' fees, however, that she based her decision to grant defendant's motion *solely* on her reading of *Truk Away of Rhode Island, Inc. v. Macera Bros. of Cranston, Inc.*, 643 A.2d 811 (R.I.1994): "I base this award of attorneys' fees solely on the direction I'm taking from the *Truk Away* case." Therefore, we need not address this alternative argument concerning inherent power.

and argued at the hearing on the motion that the security posted did not cover attorneys' fees and that *Truk Away* does not require the Superior Court to award attorneys' fees under the circumstances of this case. The plaintiff's clear and focused objection occurred at the appropriate time and properly preserved the specific arguments raised on appeal for our review, rendering defendant's waiver argument entirely without merit.

## C

### *Truk Away*

Although the motion justice observed that this Court's opinion in *Blue Cross I* did not include an order directing her to award the successful bidder attorneys' fees, she decided nonetheless to award defendant reasonable attorneys' fees based solely upon her belief that our decision in *Truk Away* mandated such an award. The plaintiff argues that the motion justice misconstrued *Truk Away*, which it believes requires no such automatic award. We agree.

"It is well settled that attorneys' fees may not be appropriately awarded to the prevailing party absent contractual or statutory authorization." *Insurance Company of North America v. Kayser–Roth Corp.*, 770 A.2d 403, 419 (R.I.2001). Generally, when such contractual, statutory or legal basis exists, "the award of attorneys' fees rests within the sound discretion of the trial justice." *Women's Development Corp. v. City of Central Falls*, 764 A.2d 151, 162 (R.I.2001).

In *Truk Away*, we noted that at common law and under our case law, "there was no liability * * * for damages suffered by reason of an injunction erroneously granted, unless suit was maliciously brought." *Truk Away*, 643 A.2d at 816 (citing *Johnson Wholesale Perfume Co. v. Blumen*, 63 R.I. 485, 490, 9 A.2d 857, 859 (1939)). Because of our desire to avoid encountering another situation in which a damaged party such as the Macera Corporation (Macera)—the successful bidder that was wrongfully enjoined in *Truk Away*—has no means of legal redress, we held that, henceforth, a security would be required upon the issuance of injunctions of public contract awards, even "in the absence of a finding of corruption or bad faith," to provide a means for an aggrieved party to collect costs and damages incurred as a result of a wrongful injunction. *Id.*[3]

This new requirement, however, could not serve as a means of compensating Macera for the significant damages it suffered as a result of having been wrongfully enjoined because no bond had been posted. As such, in light of the unique circumstances of *Truk Away*,[4] we granted the only remedy available to us at that time: "by virtue of our inherent power," we required that Truk Away pay Macera's usual costs and reasonable attorneys' fees for defending against the wrongful injunction and for prosecuting the appeal. *Truk Away*, 643 A.2d at 817.

Contrary to the motion justice's reading of *Truk Away* in the present case, we did *not* hold that the posting of security we prospectively required in *Truk Away*

---

**3.** It should be noted that attorneys' fees are not traditionally included—nor were they specifically included here—within the definition of "costs." *See Di Iorio v. Cantone,* 49 R.I. 452, 454, 144 A. 148, 149 (1929).

**4.** Although Truk Away did not act maliciously, it had very questionable standing to seek to vacate the award of the contract to Macera because it was "an unsuccessful bidder whose bid did not meet the specifications [set by the City of Warwick] in several significant respects * * *." *Truk Away,* 643 A.2d at 817.

would be available for the payment of attorneys' fees in *all* cases. Rather, it was precisely the unique facts of *Truk Away* that prompted us to award attorneys' fees specifically to Macera. Simply put, *Truk Away* does *not* provide an independent basis for awarding attorneys' fees.

■ In addition, none of the unique circumstances that faced this Court in *Truk Away* are present here to require us to use our inherent power to award attorneys' fees to the defendant as we did Macera. There is no question that the plaintiff's bid was responsive and that the plaintiff had standing to challenge the award of the state's health insurance contract to United. Perhaps more importantly, here the plaintiff posted a bond. Therefore, unlike Macera, if the defendant had claimed damages as a consequence of being wrongfully enjoined, it could have sought to charge the bond and would not have been left without a means of compensation. Moreover, the facts of this case as found by the motion justice do not fall into

any of the categories that might convince this Court to deviate from the "American rule" and award attorneys' fees to a prevailing party.[5] Accordingly, we did not invoke our inherent powers to award the defendant reasonable attorneys' fees in *Blue Cross I*, and we do not do so here.

### Conclusion

For the aforementioned reasons, the plaintiff's appeal is sustained. The Superior Court's award of attorneys' fees to the defendant is vacated. The defendant shall be awarded costs in accordance with the motion justice's order. The papers in this case are remanded to the Superior Court.

Justice GOLDBERG did not participate.

5. The "American rule" requires "that each litigant must pay its own attorney's fees, even if the party prevails in the lawsuit." Black's Law Dictionary 82 (7th ed.1999). Nevertheless, we acknowledge that this Court may award attorneys' fees as an exercise of "its inherent power to fashion an appropriate remedy that would serve the ends of justice." *Vincent v. Musone*, 574 A.2d 1234, 1235 (R.I. 1990). This remedy, however, is available only in one of three narrowly defined circumstances: (1) pursuant to the "common fund exception" that "allows a court to award attorney's fees to a party whose litigation efforts directly benefit others[,]" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); (2) "as a sanction for the 'willful disobedience of a court order[,]' " *id.* (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)); or (3) when a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Id.* at 45–46, 111 S.Ct. 2123.