**Supreme Court**

No. 2014-184-Appeal.
No. 2014-185-Appeal.
No. 2014-186-Appeal.
(NC 11-234)

America Condominium Association, Inc. et   :
al.

v.               :

Stefania M. Mardo, as Trustee of the     :
  Constellation Trust—2011 et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2014-184-Appeal.
No. 2014-185-Appeal.
No. 2014-186-Appeal.
(NC 11-234)
Concurring opinion begins on page 22
Concurring and dissenting opinion begins on page 23
Concurring and dissenting opinion begins on page 26

America Condominium Association, Inc. et   :
al.

v.                :

Stefania M. Mardo, as Trustee of the   :
  Constellation Trust—2011 et al.


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The plaintiffs, America Condominium Association,

Inc. (America) and Capella South Condominium Association, Inc. (Capella), appeal from a

February 25, 2014 judgment[1] issued after a bench trial in Newport County Superior Court; that

judgment provided that the defendants, Stefania M. Mardo, as Trustee of the Constellation

Trust—2011 (the Trust) and Harbor Houses Condominium Association, Inc. (Harbor Houses),

were liable for breach of contract and for committing a common law trespass.  The trial justice

further concluded that Count Three of the plaintiffs' complaint, which alleged that the defendants

breached restrictive covenants contained in the Goat Island South Condominium Second

---

[1]     The February 25, 2014 judgment reflects the holdings of the trial justice in an August 22,
2012 written decision.

- 1 -

Amended and Restated Declaration of Condominium (GIS SAR), was moot and that the plaintiffs were not entitled to an award of attorneys' fees and costs.

The plaintiffs contend on appeal that the trial justice committed the following errors: (1) finding a continuing trespass but failing to issue a mandatory permanent injunction requiring the removal of the trespass; (2) finding Count Three of plaintiffs' complaint to be moot; and (3) failing to award attorneys' fees and costs to plaintiffs in accordance with the GIS SAR. The defendants filed a cross-appeal. In support of the cross-appeal, the Trust argues that it was error for the Superior Court to have found that defendants had breached the GIS SAR and to have found that defendants had committed a common law trespass.[2]

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court in part and we vacate that judgment in part.

# I

## Facts and Travel

This is not the first time this Court has addressed controversies at the Goat Island South Condominium (GIS). In fact, it is the fifth time we have been called upon to quell these seemingly unending disagreements. See IDC Properties, Inc. v. Goat Island South Condominium Association, Inc., 128 A.3d 383 (R.I. 2015); Sisto v. America Condominium Association, Inc., 68 A.3d 603 (R.I. 2013); America Condominium Association, Inc. v. IDC, Inc., 870 A.2d 434 (R.I. 2005); America Condominium Association, Inc. v. IDC, Inc., 844 A.2d 117 (R.I. 2004). We deem it important to reiterate once more that "[w]e are more than persuaded

---

[2]     On appeal, Harbor Houses invites us to reconsider our holding in Sisto v. America Condominium Association, Inc., 68 A.3d 603, 614 (R.I. 2013), to the effect that consent of all 154 Goat Island South unit owners is necessary for any expansion of Harbor Houses condominiums. After careful consideration, we have made our opinion on that matter clear; and, therefore, we decline Harbor Houses' invitation.

that the [parties to this case] have had their day in court—and then some" and that "[t]he time has come for this litigation to end." IDC Properties, Inc., 128 A.3d at 394 (internal quotation marks omitted). In furtherance of that goal, we refer the interested reader to our previous opinions for a full recitation of the facts, and we confine ourselves to only those facts that are relevant to this appeal.

For the purposes of this appeal, it is necessary to reiterate the basic structure of the GIS condominiums:

> "Goat Island South Condominium is comprised of three sub-condominium residential areas—Harbor Houses Condominium, America Condominium, and Capella South Condominium. Of the 154 total units, there are nineteen stand-alone townhouse residence units located in Harbor Houses Condominium, forty-six residence units in America Condominium, and eighty-nine residence units in Capella South Condominium. Each of these sub-condominiums is governed by a separate association and declaration and must also adhere to the provisions of the master declaration. Likewise, these declarations must comply with Rhode Island's Condominium Act, G.L.1956 chapter 36.1 of title 34." Sisto, 68 A.3d at 606.

According to the findings of fact by the trial justice in the instant case, the Trust has owned Unit 18 in Harbor Houses since January of 2011. Harbor Houses' declaration makes it clear that the yard which surrounds Unit 18 is designated as a limited common element, which in the instant case means it is "reserved for the use by one or more but fewer than all [u]nits, and intended for the exclusive use" of Unit 18. Id. (internal quotation marks omitted). On April 19, 2011, before this Court's decision in Sisto, 68 A.3d at 603, plaintiffs filed the instant action seeking injunctive relief to bring a halt to the expansion of Unit 18 onto a limited common element—specifically, the yard surrounding Unit 18 on which a foundation had been built by Unit 18's previous owners. The plaintiffs' complaint alleged breach of the GIS SAR, violation of restrictive covenants, common law trespass, and violation of Rhode Island's Condominium Act, G.L. 1956

- 3 -

chapter 36.1 of title 34 (the Act).  A bench trial was held on May 12, 17, 27, and 31, June 14, and

September 22, 2011.  We relate below the salient aspects of what transpired at that trial.

**A**

**The Trial Testimony**

**1. The Testimony of Bennie Sisto**

As the trial justice's decision in the instant case reflects, Bennie Sisto is the father of

trustee Stefania Mardo, and he entered this case as "an additional trustee" prior to the Superior

Court's decision.

Mr. Sisto testified at trial, during which testimony he acknowledged that Unit 18 was

being expanded by the addition of exterior walls.  However, he further stated that the "original

expansion of Harbor Houses Number 18 was obviously back when [the previous owners] had

ownership of the property back in 2000, 2001;" he added that his construction was only on the

"existing foundation."  Mr. Sisto conceded that his expansion of Unit 18 did expand it past its

"1988 footprint," but he reiterated that the expansion was confined to the existing foundation,

which was on the property when he purchased it.

It was Mr. Sisto's testimony that, at the time he purchased Unit 18, the foundation on

which he was building was then being used as a "patio and a deck."  However, it was his further

testimony that the foundation was not intended to be a patio or a deck but, rather, had been part

of a "proposed building expansion" by the previous owners.  He added that "a previous Court

ordered that th[e] foundation be put into the ground" but the parties then "agreed not to complete

construction until the Court case ended."  Referring to his affidavit and an attached judgment of

the Superior Court (entered as an exhibit at trial), Mr. Sisto also testified that it was his belief

that the expansion of Unit 18 had been later "expressly authorized" by the Superior Court judgment attached to his affidavit.

The Superior Court judgment attached to Mr. Sisto's affidavit is dated December 14, 2009 and reflects a decision by a Superior Court justice to the effect that the defendants in that action (which did not include America or Capella) were enjoined from interfering with the right of the previous owners of Unit 18 to proceed with "renovations;" the judgment allowed the "renovations" as laid out in plans issued and submitted to the Harbor Houses Condominium Board in May of 2001. It is also worth noting that trial exhibit 8 was a decision of the GIS Board, dated February 1, 2011, which stated that there was no objection by any of the unit owners to the "plans for Harbor Houses # 18;" there was no assertion that the "proposed improvements, alterations or changes would significantly diminish the water view of such residence units as viewed from the glass doors/windows/balconies of such residence units." Despite the fact that the decision of the GIS Board was dated after the Trust bought the property, that decision is addressed to the previous owners. It was Mr. Sisto's testimony on cross-examination that the plans he used for the expansion of Unit 18 were actually those that were commissioned by the previous owners, and he added that his expansion was smaller than the expansion intended by the previous owners.

Mr. Sisto's affidavit also stated that "ten (10) of the nineteen (19) Harbor Houses unit owners have expanded over the years, including most recently in 2008," and he cited specifically to the expansion of Harbor Houses Unit 10 to support the contention that the Trust was within its rights in expanding Unit 18. However, Mr. Sisto did concede at trial that the area he was expanding on was "owned in undivided percentage interest" by the 154 unit owners at GIS and that he did not have the unanimous approval of all 154 unit owners to expand his condominium.

It was further Mr. Sisto's testimony that, prior to his commencing the expansion of Unit 18, Natalie Volpe, the President of the GIS Board, communicated with him by email regarding his expansion. Her email was entered as an exhibit at trial. The email cited as authority the Newport County Superior Court rulings which this Court eventually reviewed in <u>Sisto</u>, 68 A.3d at 603. (The appeal was still pending before this Court at the time when Ms. Volpe sent the email.) The email contained the following pertinent language:

> " * * * [I]f a portion of the limited common element is to be permanently occupied, thereby necessitating a reallocation, than [sic] the unanimous consent of 154 unit owners must be present in order to amend the declaration. Additionally, in accordance with basic property law, it is prohibited to permanently occupy a limited common element to the absolute exclusion of the other 154 property owners without their consent.
>
> " * * * A recent ruling in Newport * * * has resulted in an order for the construction of an addition to an existing house be taken down. The precedent has been established. Please do not take further action on [Unit] 18 * * * at this time as GIS will enforce the [GIS SAR and the Act]."

Mr. Sisto testified that he understood that email to be the personal opinion of Ms. Volpe, not the opinion of the GIS Board, since "[t]hey did not vote on [it]."

**2. The Remaining Pertinent Testimony at Trial**

Sandra Conca testified at trial that she was the President of America's Board. It was her further testimony that she did not consent to the expansion of Unit 18, and she expressed her belief that a building could not be constructed on Unit 18's yard since it was a limited common element; she added that such expansions would decrease the overall ownership percentage of the common elements of each unit owner. She further stated that at least one owner of a different Harbor Houses condominium had been allowed to expand in the past.

- 6 -

Edmond McKeown testified that he owned an America condominium and that he did not consent to the expansion of Harbor Houses Unit 18 onto a limited common element; he added that the expansion of Unit 18 greatly increased the size of that unit.

**B**

**The Superior Court Decision**

In her August 22, 2012 decision, the trial justice began by noting that plaintiffs' motion for a preliminary injunction had been "advanced to a trial on the merits." The trial justice then proceeded to make findings of fact and credibility determinations. She found Mr. Sisto to be a "very genial, respectful and forbearing gentlem[a]n [who] provided the [c]ourt with considerable information concerning * * * the construction history of unit 18." She noted that he acknowledged that the unanimous consent of 154 unit owners had not been obtained, but she also noted that he had testified that he was not expanding Unit 18 beyond the existing foundation, which had been installed by the previous owners in connection with a planned expansion. The trial justice also noted that Mr. Sisto testified that the expansion consisted of placing exterior walls "'where there were no walls before'" and that he acknowledged that the expansion was altering the boundaries of his unit.

The trial justice proceeded to find that defendants were acting in violation of § 34-36.1-2.17(d) and § 34-36-7(b) of the Act, which statutory provisions require unanimous consent of all unit owners with respect to an amendment of the GIS SAR allowing for expansion by changing of the boundaries of any unit or the allocated interests of a unit; she added that the GIS SAR provided that it was subject to the Act and that, therefore, the provisions of the GIS SAR must be interpreted to conform with the requirements of the Act. Accordingly, she found that defendants had violated the GIS SAR as well as the above-cited statutory provisions.

At that juncture, the trial justice proceeded to state: "If the [c]ourt was permitted to view this controversy through a purely equitable lens, a different outcome could be considered." She noted that the expansion of Unit 18 did not result in any view obstruction for any of the America or Capella condominiums. She added that nine other Harbor Houses condominiums had been expanded "without objection or challenge from America or Capella." (Internal quotation marks omitted.) She then granted plaintiffs' request for injunctive relief precluding further expansion of Unit 18 but declined to grant plaintiffs' request that the court issue a mandatory injunction ordering the Trust to remove all construction on Unit 18 that expanded it beyond its "'pre-expansion footprint.'" She further declined to award plaintiffs attorneys' fees or court costs.

On February 25, 2014, a final judgment was entered. That judgment held: (1) that the expansion provisions of § 2.3 of the GIS SAR violated the Act and could not be enforced; (2) that defendants had breached §§ 2.3(a)(i)(A) & (M) and § 11.1(b) of the GIS SAR; (3) that no judgment need enter on Count Three of plaintiffs' complaint, which alleged a violation of restrictive covenants, since the trial justice deemed that issue to be moot; and (4) that defendants had committed a common law trespass. The judgment expressly denied plaintiffs' request for attorneys' fees and costs. Timely appeals were filed.

## II

## Issues on Appeal

The plaintiffs make three allegations of error on appeal: (1) that, even though the trial justice properly found a continuing trespass, she erred when she "failed to issue a mandatory permanent injunction" requiring the removal of the trespass; (2) that the trial justice erred in declaring Count Three of plaintiffs' complaint moot; and (3) that the trial justice "committed an

error of law by failing to recognize the contractual basis for awarding attorneys [sic] fees as provided by * * * the GIS SAR."

In its cross-appeal, the Trust contends: (1) that the trial justice erred "as a matter of law in ruling that the Trust breached the GIS SAR;" and (2) that the trial justice committed a further error of law when she ruled that the Trust committed a trespass.

**III**

**Analysis**

We must begin our analysis by noting that much of the testimony and the trial justice's decision in the instant case are devoted to the issue of whether or not expansion of a GIS condominium onto a limited common element required the approval of all 154 unit owners. At that time, the parties and the trial justice did not have the benefit of our decision in Sisto, 68 A.3d at 603. In Sisto, 68 A.3d at 614, we definitively held that the Act requires the consent of all 154 unit owners before any unit could expand its boundaries. As such, the parties (with the exception of Harbor Houses—see footnote 2, supra) do not raise that issue on appeal. Accordingly, it is established that the Trust's expansion of Unit 18 violated the Act.

**A**

**The GIS SAR**

**1. Standard of Review**

In reviewing a condominium declaration, "we find it appropriate to apply the laws of contract construction." Sisto, 68 A.3d at 611; see Town Houses at Bonnet Shores Condominium Association v. Langlois, 45 A.3d 577, 583 (R.I. 2012). As such, we conduct a de novo review. Sisto, 68 A.3d at 612; see Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co., 11 A.3d 1078, 1083 (R.I. 2010).

We have often stated that, when we review a contract on appeal, the contract "must be viewed in its entirety, and the contract terms must be assigned their plain and ordinary meanings." Rivera v. Gagnon, 847 A.2d 280, 284 (R.I. 2004); see Bliss Mine Road Condominium Association, 11 A.3d at 1083. Consequently, "[i]f the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written." Rivera, 847 A.2d at 284 (citing W.P. Associates v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994)). Moreover, "[t]he Court will refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a [contract] where none is present." Bliss Mine Road Condominium Association, 11 A.3d at 1083 (internal quotation marks omitted). A contract is ambiguous only if it is "reasonably and clearly susceptible of more than one interpretation." Rivera, 847 A.2d at 284 (internal quotation marks omitted).

## 2. The Trust's Cross-Appeal: Breach of Contract

The first question with which we are presented is whether or not, in addition to violating the Act, the expansion of Unit 18 also violated the GIS SAR. In its cross-appeal, the Trust raises the contention that the trial justice erred in finding that the Trust violated the GIS SAR. It contends that, due to the fact that the expansion provisions in § 2.3 of the GIS SAR were held by the trial justice to be violative of the Act, those provisions are "unenforceable and cannot form the basis of a breach of contract." It further argues that § 11.1(b) of the GIS SAR is not applicable to the instant case.

In her final judgment in this case the trial justice found that §§ 2.3(a)(i)(A) & (M) and § 11.1(b) of the GIS SAR had been breached. Even assuming arguendo that the Trust is correct that § 2.3 of the GIS SAR could not be the basis for a finding of breach of contract due to the fact that that section was found to be unenforceable by the trial justice, there are alternative

grounds on which this Court can conclude that the trial justice properly held that the GIS SAR was breached—namely, § 11.1(b). Section 11.1(b) of the GIS SAR adopts the language of § 34-36.1-2.17(d) of the Act and provides as follows:

> "Consistent with subsection 34-36.1-2.17(d) of the Act, except to the extent expressly permitted or required by the Act, no amendment may * * * change the boundaries of any Unit * * * in the absence of unanimous consent of the Unit Owners."

It would not be possible for this Court to rule that the language of § 11.1(b) was ambiguous without engaging in the "mental gymnastics" and "stretching [of] the imagination" which we have consistently refused to do when confronted with clear contractual language. Bliss Mine Road Condominium Association, 11 A.3d at 1083 (internal quotation marks omitted). We declared in Sisto, 68 A.3d at 612-14, that the Act required unanimous consent of all 154 unit owners before a change in the boundaries of any unit could be made, and § 11.1(b) of the GIS SAR clearly and unambiguously echoes that requirement; it incorporates the language of the Act itself and requires unanimous consent to amend a condominium declaration to change the boundaries of a unit. See Rivera, 847 A.2d at 284. Mr. Sisto admitted in his testimony at trial that he did not have the unanimous consent of all 154 unit owners to change the boundaries of Unit 18. Accordingly, it necessarily follows that the expansion of Unit 18 violated the clear and unambiguous language of § 11.1(b) of the GIS SAR.

The Trust contends that it could not have breached § 11.1(b) of the GIS SAR because that section applies to amendments to the GIS SAR, whereas the Trust did not seek an amendment of the GIS SAR. However, this argument is without merit. The Act specifically states that "[t]he percentage of the undivided interest of each unit owner in the common areas and facilities * * * shall not be altered without the consent of all of the unit owners expressed in an amended declaration duly recorded." Section 34-36-7(b) (emphasis added). Section 34-36.1-

- 11 -

2.17(d) then requires, as we recognized in Sisto, 68 A.3d at 613-14, that an amendment to change the boundaries of a unit be the result of "unanimous consent of [all the other] unit owners." The amendment language in § 34-36.1-2.17(d) is clearly reflective of the requirement of an amendment laid out in § 34-36-7(b), and it is undisputed that both statutory sections are applicable to the instant case. Importantly, § 11.1(b) of the GIS SAR contains the same amendment language as § 34-36.1-2.17(d). Therefore, the fact that the Trust did not seek an amendment does not change the fact that the Act requires the Trust to seek such an amendment before expanding the boundaries of the unit and that the GIS SAR incorporates that requirement in § 11.1(b). In our judgment, § 11.1(b) is clearly applicable to the instant case.

Accordingly, for the just-discussed reasons, we conclude that the trial justice did not err in finding that the Trust breached the GIS SAR.

### 3. The Plaintiffs' Appeal: Count Three in Plaintiffs' Complaint

The plaintiffs posit on appeal that the trial justice "committed an error of law in declaring Count Three of the plaintiff's [sic] complaint moot because the trespass * * * continues[] to violate the restrictive covenants of the GIS SAR." They aver that the violation of the restrictive covenants would require removal of the trespass.

In Count Two of plaintiffs' complaint, they allege that "[b]y expanding Harbor Houses Unit No 18 onto limited common elements and changing the boundaries of Harbor Houses Unit No. 18, without obtaining the required amendment," the Trust was in breach of the GIS SAR. Similarly, in Count Three of their complaint, the plaintiffs alleged that "[b]y expanding Harbor Houses Unit No. 18 onto limited common elements and by changing the boundaries of Harbor Houses Unit No. 18 without obtaining the required amendment," the Trust violated the restrictive covenants that "run with the land." The complaint requests relief based on those two counts as

well as a count alleging common law trespass; specifically, it requests an injunction prohibiting the construction of the proposed expansion on Unit 18 and an injunction requiring the removal of "any and all construction or improvements that encroach upon limited common elements and/or change the boundaries of Harbor Houses No. 18 * * *."

Thus, in plaintiffs' complaint, the same relief is sought based on the same set of facts in both Counts Two and Three. The trial justice, having found that there was a breach of contract in this case and a common law trespass, awarded what she considered to be the appropriate damages based on the relief sought in the complaint. Once she made a decision on the breach of contract claim and awarded the appropriate damages, we can perceive no error in the trial justice's declining to contend with the restrictive covenants claim since it was not necessary for her to do so. See generally Grady v. Narragansett Electric Co., 962 A.2d 34, 42 n.4 (R.I. 2009) (stating that it is this Court's "usual policy of not opining with respect to issues about which [it] need not opine").

### 4. The Plaintiffs' Appeal: Attorneys' Fees and Costs

The plaintiffs aver that the trial justice committed an error of law when she failed to award them attorneys' fees and costs. The Trust counters by claiming that, because the expansion provisions in § 2.3 of the GIS SAR were found to be unenforceable, breach of those sections may not form the basis of an award of attorneys' fees and costs under the GIS SAR.

We have repeatedly stated that, in conducting a review of a trial justice's award of attorneys' fees, "[t]he issue of whether there exists a basis for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is de novo." Dauray v. Mee, 109 A.3d 832, 845 (R.I. 2015) (emphasis in original) (quoting Blue Cross & Blue Shield of Rhode Island v. Najarian, 911 A.2d 706, 709 (R.I. 2006)); see also Danforth v. More, 129 A.3d 63, 72

(R.I. 2016). Accordingly, we have further stated that "[o]nly if it is determined that there is such a [legal] basis, then this Court will review a motion justice's actual award of attorneys' fees for an abuse of discretion." Dauray, 109 A.3d at 845 (quoting Najarian, 911 A.2d at 709); see also Danforth, 129 A.3d at 72.

This Court has long adhered to the "American rule" that "requires each litigant to pay its own attorney's fees absent statutory authority or contractual liability." Moore v. Ballard, 914 A.2d 487, 489 (R.I. 2007); see Najarian, 911 A.2d at 710; see also Insurance Company of North America v. Kayser-Roth Corp., 770 A.2d 403, 419 (R.I. 2001). Consequently, we begin our analysis by looking to the relevant provision in the GIS SAR to determine whether there is a basis for plaintiffs' claim for attorneys' fees and costs. Section 11.3 states in pertinent part as follows:

> "Violation of any of the terms of the [GIS SAR] * * * shall be grounds for relief which will include, but not be limited to, any actions for money damages, injunctive relief, foreclosure of the lien pursuant to the Act, or any combination thereof, each such remedy to be cumulative and not exclusive. Any such violator shall be liable for all court costs and attorney's fees incurred in enforcing the rights pursuant to the preceding sentence and failure or forbearance by any person in addressing any violation thereof shall not be deemed a waiver of such violation or the right to do so at a later time." (Emphasis added.)

On the basis of our reading of § 11.3 and our review of the entirety of the GIS SAR, we have come to the ineluctable conclusion that § 11.3 does provide a basis for an award of attorneys' fees and costs in the instant case where plaintiffs were enforcing rights provided for in the GIS SAR. In our opinion, the language of § 11.3 is susceptible to only one meaning, and we must apply that plain and ordinary meaning. See Rivera, 847 A.2d at 284; see also Bliss Mine Road Condominium Association, 11 A.3d at 1083. The present action seeking injunctive relief was brought by plaintiffs to enforce their rights pursuant to § 11.1(b) (which incorporates by

reference § 34-36.1-2.17(d) of the Act), in addition to § 2.3. Due to the fact that the rights being enforced are provided for in the GIS SAR, § 11.3 is controlling in this case.

We are not convinced by the Trust's argument that attorneys' fees and costs should not be awarded in the instant case because the expansion provisions in § 2.3 of the GIS SAR were found to be unenforceable by the trial justice and that, therefore, any violation of those provisions cannot be the basis for an award of attorneys' fees.[3] We have already concluded that, regardless of whether or not the Trust breached § 2.3 of the GIS SAR, it did breach § 11.1(b), which can also be a basis for the award of attorneys' fees and costs. Consequently, the clear terms of § 11.3 provide a basis for an award of attorneys' fees and costs to plaintiffs in this case.

Having determined that a valid basis for an award of attorneys' fees and costs exists, we now review the actual award under an abuse of discretion framework. See Dauray, 109 A.3d at 845. While a trial justice enjoys considerable discretion in determining the value of an award of attorneys' fees, such discretion is not unbridled and does not allow for a direct contravention of a mandatory award of fees contained in the GIS SAR. Here, the word "shall" in § 11.3 of the GIS SAR dictates that an award of attorneys' fees and costs is mandatory following a breach of the agreement. Indeed, if we were to allow the trial justice to award no fees, the mandatory award of fees in the GIS SAR would completely lack force. See Rodrigues v. DePasquale Building and Realty Co., 926 A.2d 616, 624 (R.I. 2007) (stating that "[u]nder established contract law principles, when there is an unambiguous contract and no proof of duress or the like [(i.e., proof

---

[3]     The Trust makes several additional arguments to support its contention that attorneys' fees and costs should not have been awarded in this case. It posits that § 11.3 allows for such fees and costs only if the action being brought is to enforce the terms of the GIS SAR, not the requirements of the Act, and it cites to a number of cases that it considers to be supportive of that argument. It also contends that it did not breach the GIS SAR. However, we have already concluded that the Trust breached the GIS SAR; and, therefore, the present action was brought to enforce the terms of the GIS SAR, not merely the terms of the Act. Consequently, the terms of § 11.3 are applicable to the instant case.

that the contract involved was a contract of adhesion)], the terms of the contract are to be <u>applied</u> <u>as written</u>") (emphasis added) (internal quotation marks omitted).

Given our conclusion that a valid basis for an award of attorneys' fees exists, and that an award of no fees in this context would constitute an abuse of the trial justice's discretion, we remand for the trial justice's valuation of the attorneys' fees and costs to be awarded.

Accordingly, we hold that the trial justice did not err in determining that the Trust had breached the GIS SAR or in declining to opine on the restrictive covenants count in plaintiffs' complaint. However, we do find error with respect to the trial justice's failure to award attorneys' fees and costs to plaintiffs based on the terms of the GIS SAR.

**B**

**Trespass**

**1. Standard of Review**

When examining a judgment in a nonjury case, this Court will reverse if "it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence[,] or made factual findings that were clearly wrong." <u>Rose Nulman Park Foundation ex rel. Nulman</u> <u>v. Four Twenty Corp.</u>, 93 A.3d 25, 28 (R.I. 2014) (quoting <u>Lamarque v. Centreville Savings</u> <u>Bank</u>, 22 A.3d 1136, 1139-40 (R.I. 2011)). A decision by a trial justice with regard to injunctive relief is also "discretionary in nature, and such a decision will not be disturbed on appeal absent a showing of abuse of discretion or error of law." <u>North End Realty, LLC v. Mattos</u>, 25 A.3d 527, 530 (R.I. 2011). In addition, as we have frequently stated, issues of law are reviewed <u>de</u> <u>novo</u>. <u>Rose Nulman Park Foundation ex rel. Nulman</u>, 93 A.3d at 29; <u>see</u> <u>also</u> <u>Cullen v. Tarini</u>, 15 A.3d 968, 977 (R.I. 2011).

## 2. The Trust's Cross-Appeal: Common Law Trespass

The Trust contends that the trial justice erred as a matter of law in finding that the expansion of Unit 18 constituted a common law trespass because the "area over which the expansion was made is property that the Trust owns [as a tenant in common] and had the exclusive right to use" and "the Trust had the consent of GIS and Harbor Houses."

The trial justice stated that the following finding of hers was dispositive of plaintiffs' trespass claim: "Expansion of a unit onto a common area causes 'a de facto alteration of the percentage of the undivided interest which each owner has in the common areas * * *.'" (quoting Strauss v. Oyster River Condominium Trust, No. 114843, 1992 WL 12153337, at *23 (Mass. Land Ct. Oct. 27, 1992)). We have conducted a detailed review of the parties' arguments and the authority cited in support of those arguments. That review leads us to the conclusion that the Trust wrongfully appropriated the limited common element on which its expansion is built; therefore, we are unable to perceive any error on the part of the trial justice in this regard.

## 3. The Plaintiffs' Appeal: Mandatory Injunction

We must now turn our attention to plaintiffs' argument that, because the trial justice found a continuing trespass, she erred when she failed to issue a mandatory injunction requiring the removal of the trespass. They allege that, when a trespass is found, an injunction mandating the removal of the trespass is required by law, except in exceptional circumstances—which they argue are not present in this case. They further point out that the trial justice did not cite to any exceptional circumstances when reaching her decision. Moreover, they contend that the Trust had notice and a warning that its expansion violated the Act in the form of the then-existing Superior Court judgments (which we eventually reviewed in Sisto, 68 A.3d at 603), and the email to Mr. Sisto from Ms. Volpe; therefore, according to plaintiffs, no exceptional

circumstances or balancing of the equities should be considered in the instant case. Lastly, plaintiffs add that the result they seek would not operate oppressively or inequitably.

Our recent opinion in Rose Nulman Park Foundation ex rel. Nulman, 93 A.3d at 29 (quoting Santilli v. Morelli, 102 R.I. 333, 338, 230 A.2d 860, 863 (1967)), referenced our "general rule" that "[a] continuing trespass wrongfully interferes with the legal rights of the owner, and in the usual case those rights cannot be adequately protected except by an injunction which will eliminate the trespass." Indeed, in our opinion in Santilli, we stated that:

> "[T]he owner of land is entitled to a mandatory injunction to require the removal of a structure that has been unlawfully placed upon his land, and the fact that such owner has suffered little or no damage because of the offending structure, or that it was erected in good faith, or that the cost of its removal would be greatly disproportionate to the benefit accruing to the plaintiff from its removal, is not a bar to the granting of [injunctive] relief. However, the existence of such circumstances may in exceptional cases move the court to withhold the [injunctive] relief contemplated by the general rule." Santilli, 102 R.I. at 338, 230 A.2d at 863; see Renaissance Development Corp. v. Universal Properties Group, Inc., 821 A.2d 233, 238 (R.I. 2003).

Such exceptional circumstances would exist "where the substantial rights of the landowner may be properly safeguarded without recourse to an injunction which in such cases would operate oppressively and inequitably." Santilli, 102 R.I. at 338, 230 A.2d at 863 (internal quotation marks omitted); see Adams v. Toro, 508 A.2d 399, 401 n.1 (R.I. 1986). A court may "withhold injunctive relief after balancing the equities or, put another way, considering the relative hardships to the parties." Rose Nulman Park Foundation ex rel. Nulman, 93 A.3d at 30. More specifically, we have held that exceptional circumstances "include, but are not limited to, acquiescence, laches, or a de minimis trespass." Id. at 29.

That being said, this Court has maintained that "where the encroachment was intentional, in that [the] defendant proceeded despite notice or warning, or where he [or she] failed to take

proper precautions to ascertain the boundary" we will not "balance the equities" or consider the "relative convenience or hardship [to each party] involved." Renaissance Development Corp., 821 A.2d at 238 (internal quotation marks omitted). It is important to reiterate, as well, that "this Court has emphasized [the fact that] '[t]he issuance and measure of injunctive relief rest in the sound discretion of the trial justice.'" Rose Nulman Park Foundation ex rel. Nulman, 93 A.3d at 30 (quoting Cullen, 15 A.3d at 981). It is with that standard of review in mind that we turn to plaintiffs' contentions on appeal.

We begin by acknowledging that Mr. Sisto received an email from Ms. Volpe requesting that he not take any further action on the expansion of Unit 18 due to the decisions of the Superior Court, which were then pending on appeal in this Court and would eventually be reviewed in our opinion in Sisto, 68 A.3d at 603. However, although it is a very close question, in our view the notice provided by Ms. Volpe's email is not of such moment as to cause us to conclude that a balancing of the equities by the trial justice would have been an abuse of discretion.[4] See Renaissance Development Corp., 821 A.2d at 238. Ms. Volpe's email, as Mr. Sisto pointed out in his testimony, merely reflected her own opinion; it did not result from a vote of the GIS Board. Moreover, the Superior Court decisions at issue were still pending on appeal to this Court; so, the issue of whether or not unanimous approval of the other condominium owners was required for expansion had not been definitively decided by this Court at the time of Ms. Volpe's email. Indeed, our opinion in Sisto, 68 A.3d at 603, was not issued until after the

---

[4] We note that the trial justice did not make a specific finding with respect to whether or not there were exceptional circumstances in this case which warranted her failure to issue a mandatory injunction requiring the removal of the expanded portion of Unit 18. She simply stated her conclusion that she would not be issuing such an injunction. However, we "may exercise [our] prerogative to affirm a determination of a trial justice on grounds different from those enunciated in his or her decision." Lerner v. Ursillo, 765 A.2d 1212, 1216 (R.I. 2001); see also Ogden v. Rath, 755 A.2d 795, 798 (R.I. 2000) (per curiam).

- 19 -

trial justice issued her decision in this case (but before a final judgment reflecting that decision was entered). Accordingly, Mr. Sisto, and through him the Trust, had no completely certain knowledge, at the time Unit 18 was being expanded, that they had to do any more than comply with the terms of the GIS SAR as they purportedly understood them at that time. Contrary to plaintiffs' contention, it is our opinion that a balancing of equities is appropriate in this case and that this case presents the kind of exceptional and virtually unique circumstances that can justify deviation, in the exercise of sound discretion, from our general rule regarding the remedy for a continuing trespass. See Rose Nulman Park Foundation ex rel. Nulman, 93 A.3d at 30; Santilli, 102 R.I. at 338, 230 A.2d at 863.

In addition to the just-referenced facts, of great importance is the further fact that, when the Trust purchased Unit 18, that Unit already had a foundation for expansion, which foundation had been installed by the previous owners. Moreover, the Superior Court had specifically ordered that those owners be permitted to proceed with their construction, and the GIS Board had blessed the expansion by stating that no resident objected to it and that there were no issues as to the expansion affecting the water views of any of the residences. In fact, Mr. Sisto testified that the Trust's expansion of Unit 18 was based on the plans commissioned by the previous owners; in addition, the Trust's expansion was smaller than the expansion intended by the previous owners. Furthermore, other Harbor Houses units have been expanded in the past. It is therefore understandable that the Trust, upon purchasing Unit 18, reasonably believed that it was able to expand on the existing foundation that had been installed by the previous owners; it acted in good faith. Ordering the removal of the now-completed expansion of Unit 18 would be enormously oppressive, both logistically and financially. By contrast, allowing the expansion to remain in place is of little to no consequence to plaintiffs. The expansion is on land designated

- 20 -

for the exclusive use of Unit 18, and there is no allegation that the expansion is affecting the water views of any resident or is otherwise a material inconvenience for the other residents. Additionally, plaintiffs had initially sought a preliminary injunction in this case to prevent the expansion, but they failed to litigate vigorously in pursuit of such an injunction; rather, they allowed their motion for a preliminary injunction to be advanced to a trial on the merits. The result was that no decision was issued by the Superior Court until over a year after the complaint was filed, during which time construction on the expansion of Unit 18 was ongoing.

For all of the above-stated reasons, we are convinced that it would be oppressive and inequitable to require the removal of the expanded portion of Unit 18 in the instant case. See Santilli, 102 R.I. at 338, 230 A.2d at 863. Accordingly, it is our conclusion that the trial justice did not abuse her discretion in issuing an injunction preventing any further expansion of Unit 18 while not issuing an injunction requiring the removal of the expanded portion of Unit 18.

## IV

### Conclusion

In conclusion, on the plaintiffs' appeal we hold that: (1) the trial justice did not abuse her discretion in failing to issue a mandatory injunction requiring the removal of the expansion of Unit 18; (2) the trial justice did not err in failing to rule on Count Three of the plaintiffs' complaint; and (3) the trial justice did err in failing to award attorneys' fees and costs to the plaintiffs based on the terms of the GIS SAR. With regard to the Trust's cross-appeal, it is our holding that: (1) there was no error committed by the trial justice in determining that the Trust breached the GIS SAR; and (2) the trial justice also did not err in determining that the Trust had committed a trespass.

Accordingly, we affirm the judgment of the Superior Court in part, and we vacate that judgment in part. We remand the record to that tribunal for proceedings consistent with this opinion.

**Justice Flaherty, concurring.** I concur completely with the well written and articulate opinion of the majority in this case but take the liberty to focus on one issue in the appeal, the decision of the trial justice to decline to award counsel fees.

It is my opinion that a trial justice has no authority to disregard the clear and unambiguous language used by the parties to an agreement and refuse to award counsel fees when the parties themselves have assented that they will be awarded in the event of a breach. In my view, this fits squarely with the American rule.[5]

There is substantial law throughout the United States that supports this position. See, e.g., McDowell Mountain Ranch Community Association, Inc. v. Simons, 165 P.3d 667, 670 (Ariz. Ct. App. 2007) ("the court lacks discretion to refuse to award fees under [a] contractual provision"); Lashkajani v. Lashkajani, 911 So.2d 1154, 1158 (Fla. 2005) ("Provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced. * * * Trial courts do not have the discretion to decline to enforce such provisions, even if the challenging party brings a meritorious claim in good faith."); Yim K. Cheung v. Wing Ki Wu, 919 A.2d 619, 624-25 (Me. 2007) ("As a general rule, courts must enforce contract provisions that require the payment of attorney fees, so long as they are reasonable."); DiMarzio

---

[5] In his dissent, the Chief Justice reasons that Sophie F. Bronowiski Mulligan Irrevocable Trust v. Bridges, 44 A.3d 116 (R.I. 2012), supports a conclusion that counsel fees are within the discretion of the trial justice. I respectfully disagree; the reason for the remand in that case was because "the clear language of the lease agreement provided contractual authorization for the award of attorneys' fees, and that the trial justice abused her discretion in failing to do so." Id. at 122.

v. Crazy Mountain Construction, Inc., 243 P.3d 718, 724 (Mont. 2010) ("While [the defendant] is correct that the district court is bound by the contract between [the defendant] and [the plaintiff] which entitles the prevailing party to attorney's fees, * * * that does not mean [the defendant] is entitled to all attorney's fees. The reasonable amount of attorney's fees awarded is left to the discretion of the district court."); Roy v. Mugford, 642 A.2d 688, 695-96 (Vt. 1994) ("We have authorized the trial court to consider a wide range of factors in making this determination * * * and accorded it 'a large measure of discretion' in determining reasonableness. * * * We do not believe, however, the court's discretion is broad enough to allow it to deny any recovery of attorney's fees when plaintiffs prevail. * * * Failure to award at least some fees would deny [the] plaintiffs the benefit of the contract freely entered into by the Mugfords.").

Because the parties have a right to the benefit of their bargain, I concur with the majority's opinion that the trial justice's discretion did not permit her to decline to award counsel fees in any amount.


**Chief Justice Suttell, concurring in part and dissenting in part, with whom Justice Goldberg joins.** I concur with the majority opinion in all respects except for its discussion of attorneys' fees and costs in subpart III, A.4. Although I agree with the majority that a contractual basis exists for such an award in this case, I do not believe it to be mandatory; rather it is a matter that is reserved to the sound discretion of the trial justice.

Clearly § 11.3 of the Goat Island South Condominium Second Amended and Restated Declaration of Condominiums (GIS SAR) supplies the contractual predicate for an award of attorneys' fees. Except in those rare situations where the Legislature has provided that "the court

- 23 -

shall award * * * reasonable attorney[s'] fees," see, e.g., Alves v. Hometown Newspapers, Inc., 857 A.2d 743, 757 (R.I. 2004) (quoting G.L. 1956 § 9-33-2(d)), our jurisprudence has entrusted the determination of whether to award attorneys' fees in appropriate cases to the sound discretion of a trial justice. Women's Development Corp. v. City of Central Falls, 764 A.2d 151, 162 (R.I. 2001) ("Given a proper contractual, statutory, or other legal basis to do so, the award of attorney[s'] fees rests within the sound discretion of the trial justice."). Our opinion in Sophie F. Bronowski Mulligan Irrevocable Trust v. Bridges, 44 A.3d 116 (R.I. 2012), is illustrative. In that case, we held that the trial justice abused her discretion by failing to award attorneys' fees where the clear language of a lease agreement provided that the tenant would pay reasonable attorneys' fees and costs should a court render a judgment in the landlord's favor in a legal action to recover for damages to the property. Id. at 122. We remanded the case to the Superior Court in part for a hearing on the issue of the attorneys' fees incurred by the landlord in its effort to recover damages from the tenant for the repairs required to the property. Id. Nevertheless, we maintained our adherence "to the 'American rule' that litigants are generally responsible for their own attorneys' fees and costs," but that "attorneys' fees may be appropriately awarded, at the discretion of the trial justice, given proper contractual or statutory authorization." Id. (quoting Napier v. Epoch Corp., 971 A.2d 594, 598 n.4 (R.I. 2009) (emphasis added)). This Court has recently reaffirmed that our review of a trial justice's decision regarding attorneys' fees has two distinct prongs: "If it is determined that there is an adequate legal basis for such an award [which requires a de novo determination], then we review a trial justice's decision awarding or denying attorneys' fees for an abuse of discretion." Danforth v. More, 129 A.3d 63, 72 (R.I. 2016). In my opinion, our case law dictates that, when a contractual basis for the award of attorneys' fees

exists, the question of whether or not to award any amount of attorneys' fees in light of the facts and circumstances of an individual case remains squarely within the discretion of a trial justice.

The case under review illuminates the wisdom of this policy. All the reasons articulated by the trial justice to support her decision to deny plaintiffs' requested relief that defendants be ordered "to remove any and all construction that extends Unit No. 18 beyond its pre-expansion footprint" also support her decision to deny plaintiffs an award of attorneys' fees and court costs. The trial justice referenced the testimony of Bennie Sisto, "an additional trustee" of defendant Constellation Trust, who acknowledged that he had expanded the unit by constructing walls on an existing foundation. At the time, the GIS SAR provided that alterations to any building of the Harbor Houses Condominium Association, Inc. (Harbor Houses) required the prior approval of only the Harbor Houses executive board, not all 154 unit owners of Goat Island South. GIS SAR § 2.3(a)(i). Moreover, the Harbor Houses declaration in effect at the time permitted "a unit owner to expand the footprint of his or her unit onto his or her yard, so long as that expansion [did] not encroach onto the yard of the neighboring unit." Sisto v. America Condominium Association, Inc., 68 A.3d 603, 612-13 (R.I. 2013).[6] The trial justice referred to Mr. Sisto's "sincerely held beliefs of good faith compliance with the Condominium Act and the [GIS SAR]."

In addition, the trial justice found that defendant's expansion project had been endorsed by Harbor Houses, and that it did not result in any view obstruction for any other unit owner at Goat Island South. Further, she noted that nine other units at Harbor Houses had been expanded

---

[6] It was not until June 26, 2013, nearly one year after the trial justice's decision, that this Court issued its opinion declaring that G.L. 1956 § 34-36.1-2.17(d) required the unanimous approval of all unit owners of Goat Island South for the expansion of defendant's unit, not just the Harbor Houses executive board. Sisto v. America Condominium Association, Inc., 68 A.3d 603, 614 (R.I. 2013).

without objection. As the majority points out, it is "understandable that the [Constellation] Trust, upon purchasing Unit 18, reasonably believed that it was able to expand on the existing foundation that had been installed by the previous owners; it acted in good faith."

Under the "exceptional and virtually unique circumstances" of this case, I believe that the trial justice's decision to deny attorneys' fees is fully sustainable. I acknowledge that the trial justice did not specify whether she denied an award because she did not believe it was warranted or because she did not believe that she had the authority to make an award. In her decision she said that the court "declines to award the [p]laintiff's court costs and attorney[s'] fees." Her use of the verb "declines" certainly suggests that she recognized that there was a basis for awarding fees and costs, but that she was nevertheless refusing to award them.

In any event, this case will now be remanded for a determination of attorneys' fees and costs. The majority leaves unanswered, however, the question of whether the trial justice must award the plaintiffs the full amount of their reasonable attorneys' fees and costs or whether a lesser amount might suffice. Because I believe that any award of attorneys' fees and costs in this case is properly entrusted to the sound discretion of the trial justice, I respectfully dissent from that portion of the majority opinion.

**Justice Goldberg, concurring in part and dissenting in part.** I respectfully dissent from that portion of the majority's decision that reverses the denial of the plaintiffs' request for an award of attorneys' fees. I begin by noting the fact that there are now four justices writing on this one case, which in itself is a statement about the merits of this case. Although I join the Chief Justice's well-written opinion, in which he concurs in part and dissents in part, I nonetheless write separately. First, I agree with the Chief Justice that the discretion to award

attorneys' fees should remain with our experienced and well-respected trial justices. Second, in the absence of briefing and argument, I am not convinced that parties to a contract may saddle the Superior Court with mandatory jurisdiction dictating the award of attorneys' fees. Cf. Sidell v. Sidell, 18 A.3d 499, 508 (R.I. 2011) (holding that parties cannot confer subject matter jurisdiction on a court when jurisdiction is otherwise lacking). Furthermore and critically, G.L. 1956 § 9-1-45 provides for an award of attorneys' fees in contract actions[7] and thus can be read as in derogation of the common law American rule. Under our jurisprudence, the award of attorneys' fees in contract actions rests within the discretion of the trial justice, and, in passing on a request for an award of attorneys' fees, this Court has heretofore deferred to that discretion.

Next, I note that this Court has ignored its own observation about the "exceptional and virtually unique circumstances" of this case and contradicted its own rationale for affirming other aspects of the trial justice's decision. Section 11.3 of the Goat Island South Condominium Second Amended and Restated Declaration of Condominium (GIS SAR)—the governing document for this toxic, litigious community that by now has become an all-too-familiar appellation in the courts—provides, in relevant part, that:

> "Violation of any of the terms of the [GIS SAR] * * * shall be grounds for relief which will include, but not be limited to, any actions for * * * injunctive relief * * *. Any such violator shall be liable for all court costs and attorney[s'] fees incurred in enforcing

---

[7] General Laws 1956 § 9-1-45 provides, in its entirety:

> "The court may award a reasonable attorney[s'] fee to the prevailing party in any civil action arising from a breach of contract in which the court:
>
> "(1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
>
> "(2) Renders a default judgment against the losing party." (Emphases added.)

- 27 -

the rights pursuant to the preceding sentence * * *." (Emphasis added.)

Of critical importance, defendant commenced construction of the challenged addition at a time when the law was not yet settled as to whether the approval from the owners of all 154 units was required—or, in other words, whether proceeding in the absence of such approval constituted a violation of the GIS SAR. Indeed, this Court issued its opinion in Sisto v. America Condominium Association, Inc., 68 A.3d 603, 617 (R.I. 2013) (Sisto I), in June 2013, more than two years after construction of the extension to Unit 18 commenced.

Moreover, before that opinion was issued, several guideposts suggesting that defendant was acting in conformity with the GIS SAR were in place. As the majority readily notes, the expansion of Unit 18's original footprint was sanctioned by a Superior Court consent order, to which defendant's predecessors-in-interest were parties. With respect to the 2011 expansion, the Goat Island South Executive Board issued an advisory opinion one month before construction began assuring that the plans submitted by defendant's predecessors-in-interest were in accordance with § 2.3 of the GIS SAR. Uncontroverted testimony from Bennie Sisto indicated that defendant's expansion of Unit 18 was based on the approved plans and that the actual extension was slightly smaller than that initially intended by defendant's predecessors-in-interest. Significantly, nine other units in Harbor Houses Condominium had been permitted to expand in the same manner without objection from America Condominium Association. Further, plaintiffs allowed their request for preliminary injunctive relief to proceed to a drawn-out trial while construction on Unit 18 remained ongoing.

These factors are of vital significance because, at the time of the construction, the parties did not have the benefit of this Court's interpretation of G.L. 1956 § 34-36.1-2.17(d), as set forth in Sisto I, 68 A.3d at 614. While the construction began in 2011, the basis of the determination

that defendant had violated the GIS SAR by not obtaining unanimous approval from the owners of the other 153 units did not ripen until 2013. Requiring the payment of attorneys' fees under such circumstances leads to a patently unjust result.

The majority cites many of the above-referenced factors to support its conclusion that the trial justice did not abuse her discretion in declining to issue an injunction requiring the removal of the expanded section of Unit 18. I respectfully submit that overruling this seasoned and experienced trial justice on the issue of attorneys' fees on the one hand and affirming her decision to deny injunctive relief on the other gives rise to an inconsistent and perplexing outcome that is neither required nor warranted.

For the foregoing reasons, I respectfully dissent from the majority's decision reversing the trial justice's denial of the plaintiffs' request for an award of attorneys' fees and concur as to all other issues.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   America Condominium Association, Inc. et al. v. Stefania M. Mardo, as Trustee of the Constellation Trust – 2011 et al.

**CASE NO:**   No. 2014-184-Appeal.
No. 2014-185-Appeal.
No. 2014-186-Appeal.
(NC 11-234)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   June 28, 2016

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**   Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Melanie Wilk Thunberg

**ATTORNEYS ON APPEAL:**

For Plaintiffs:   Robert C. Shindell, Esq.
C. Alexander Chiulli, Esq.

For Defendants:   John A. Tarantino, Esq.
Edmund A. Allcock, Esq.
Nicole J. Benjamin, Esq.
Joseph Avanzato, Esq.
Robert D. Wieck, Esq.