**Ruth RIVERA individually and as guardian of Jazmine Principe; Nicole Rivera by and through her mother and natural guardian Toni Rivera**

v.

**Danielle GAGNON et al.**

**No. 2003–460–Appeal.**

Supreme Court of Rhode Island.

May 3, 2004.

Michael A. DelSignore, Esq., Providence, for Plaintiff.

Ralph DellaRosa, Esq., for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY,
and SUTTELL, JJ.

## OPINION

PER CURIAM.

The plaintiff, Nicole Rivera, by and through her mother and natural guardian, Toni Rivera, appeals from a Superior Court order denying her motion to vacate a settlement and dismissal stipulation. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issue raised in this appeal should not summarily be decided. Upon hearing the arguments of counsel and examining the memoranda filed by the parties and the record of the proceedings below, we conclude that cause has not been shown, and that the case should be decided at this time. For the reasons set forth herein, we affirm the judgment of the Superior Court.

### Facts and Travel

On September 21, 2001, Jazmine Principe and Nicole Rivera were passengers in an automobile driven by Ruth Rivera on Route 195 in Providence, Rhode Island. The car was struck from behind by an automobile driven by defendant, Danielle Gagnon. Ruth Rivera, Jazmine Principe, and Nicole Rivera filed a personal injury action on December 11, 2002, against defendant.[1] Thereafter, the parties engaged in settlement discussions, which ultimately resulted in Toni Rivera, as mother and natural guardian of Nicole, entering into a settlement agreement with defendant's insurance company, New London County Insurance Company (New London). The plaintiff, however, later asserted that the settlement agreement was void because of mutual mistake and sought to vacate the dismissal stipulation under Rule 60(b) of the Superior Court Rules of Civil Procedure.

Ruth Rivera, the driver of the car in which Nicole Rivera was a passenger, was insured by the Concord Group Insurance Company (Concord). After Concord initially paid the medical bills for Nicole Rivera and the other occupants of the car, it forwarded a notice of lien to plaintiff's counsel on September 29, 2002, which provided in part:

"Please note that Rhode Island Law provides that The Concord Group Ins. Co. has a lien to the amount of these payments against any recovery your clients should make against a negligent party. Before settling this case, please contact us so we can advise you of the total lien amount."

Thereafter, plaintiff's counsel entered into settlement negotiations with the adjuster for New London. The plaintiff subsequently executed three written agreements with New London. We note that New London did not accept liability on behalf of its insured in any of the documents.

1. The cases of Jazmine Principe and Ruth Rivera still were pending at the time of the dismissal stipulation and are not the subject of this appeal; therefore, all references to "plaintiff" in this opinion refer solely to Nicole Rivera, by and through her mother and natural guardian, Toni Rivera.

On December 18, 2002, Toni Rivera, individually and as mother and natural guardian of Nicole, executed a "Release and Indemnification Covenant," which said that for consideration of $3,000, Toni Rivera and Nicole Rivera released and discharged New London and Danielle Gagnon from any claims or demands. On December 31, 2002, plaintiff's counsel sent a letter to New London, indicating his client's acceptance of the offer and forwarding the release. A dismissal stipulation, signed only by plaintiff's counsel, was entered in the Superior Court record on January 3, 2003. The dismissal stipulation said, in its entirety, "By agreement of the parties the matter of Nicole Rivera is hereby dismissed with prejudice, no interest and no costs. The cases of Ruth Rivera and Jazmine Principe are still pending."

On March 5, 2003, Toni Rivera, as mother and natural guardian of Nicole Rivera, executed a second release, entitled "General Release," which said that in consideration of the $3,000 payment, she released defendant and New London from any additional claims arising from the automobile accident. Toni Rivera agreed to indemnify and hold harmless defendant and New London from any claim or demand resulting from the accident, including claims for payments or any cost for medical services provided in relation to the incident. The release provided in part:

> "This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.
>
> " * * *
>
> "[T]his settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby

released by whom liability is expressly denied."

New London remitted a settlement check in the amount of $3,000, but on March 21, 2003, plaintiff's counsel returned it to New London and requested that New London void the check because it included Concord as a payee. He further requested that New London reissue the check listing only his law firm and Ms. Rivera as payees. On the same date, Toni Rivera, on behalf of Nicole, executed a "Hold Harmless and Indemnification Agreement" in which she agreed to indemnify and hold harmless defendant, defense counsel, and New London, from any and all financial responsibility and claims, including any hospital or physician costs.[2]

New London refused to grant the request to remove Concord's name as a payee. Referring to Concord's letter of September 23, 2002, New London explained to plaintiff's counsel that because Concord placed a lien on any potential settlement money, New London was required to include Concord's name on any check issued to settle this claim.

As a result, plaintiff filed a Rule 60(b) motion in Superior Court to vacate the dismissal stipulation, asserting that there was a mutual mistake by the parties in the formation of the settlement release, and thus the dismissal stipulation and release should be vacated. The motion justice denied plaintiff's motion, and plaintiff timely appealed.

On appeal, plaintiff argues that the motion justice's denial of her Rule 60(b) motion to vacate was clear error. The defendant, in turn, asserts that Rule 60(b) may be used only to obtain relief from a judgment or a court order, and not for relief

---

**2.** We note that in this agreement, Toni Rivera listed "David" Gagnon as the party to hold harmless and not defendant "Danielle" Gagnon.

from contractual agreements that the parties entered into independently. It is not necessary to resolve the procedural issue at this time, however, because even if Rule 60(b) were the proper avenue to seek relief from mutual mistake on a settlement agreement, this appeal must be denied for an even more compelling reason. The plaintiff has not met her burden of proving the existence of mutual mistake.

## Discussion

Mutual mistake is defined as a mistake "common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be canceled." *Leonard v. McDowell*, 824 A.2d 1266, 1270 (R.I.2003) (quoting *Dubreuil v. Allstate Insurance Co.*, 511 A.2d 300, 302–03 (R.I.1986)). An agreement containing a mutual mistake fails in a material respect correctly to reflect the understanding of both parties. *Dubreuil*, 511 A.2d at 302. Because it is well established that mutual mistake must be proven by clear and convincing evidence before a reformation of an instrument should be granted, we thus conclude that plaintiff also must prove mutual mistake by clear and convincing evidence to vacate the settlement release and dismissal stipulation. *See id.* at 303.

The plaintiff's counsel submitted an affidavit asserting that his clients accepted the offer of $3,000 only because New London's insurance adjuster assured him that this settlement was to compensate plaintiff for her pain and suffering, and that the issues relating to the payment of the medical bills would be resolved through subrogation. The plaintiff's counsel averred that his clients had rejected an earlier settlement offer of $3,000 because plaintiff had medical bills in excess of $4,000.

Diane Landock, the casualty claim manager for New London who negotiated the settlement agreement with plaintiff's counsel, also submitted an affidavit to the court. Ms. Landock asserts that "there was no express condition of settlement nor any agreement whatsoever that New London County Mutual Insurance Company would pay or would reimburse the plaintiffs with respect to the lien [for the medical bills]."

On review, it is well established that a document must be viewed in its entirety, and the contract terms must be assigned their plain and ordinary meanings. *Rubery v. Downing Corp.*, 760 A.2d 945, 947 (R.I.2000) (per curiam). If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written. *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I.1994). We note that a determination of ambiguity, a question of law, is confined to the four corners of the agreements. An ambiguity occurs only when the contract term is "reasonably and clearly susceptible of more than one interpretation." *Rubery*, 760 A.2d at 947 (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 94 (R.I. 1996)).

The three documents each stated that the consideration of $3,000 was in exchange for release from all claims arising from the automobile accident. Nowhere in the indemnification agreement or release did plaintiff's counsel memorialize his alleged verbal agreement with Ms. Landock. The language of each separate document, in fact, agrees to indemnify and forever hold harmless defendant and New London Insurance Company from any other claim or demand arising from this matter.

After a careful review of the indemnification agreement and two releases, we conclude that the language of the agreements is clear and unambiguous and susceptible only to one interpretation. There-

fore, we must give the language of the releases its plain and ordinary meaning without reference to extrinsic evidence. *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill,* 652 A.2d 440, 443 (R.I. 1994) (citing *Greenwald v. Selya & Iannuccillo,* 491 A.2d 988, 989 (R.I.1985)).

■ Additionally, it is well established that "a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents." *Kottis v. Cerilli,* 612 A.2d 661, 668 (R.I.1992) (quoting *F.D. McKendall Lumber Co. v. Kalian,* 425 A.2d 515, 518 (R.I.1981)). In the case at hand, plaintiff was represented by counsel throughout the process, yet counsel asserts in his affidavit that he did not understand the contents of the three releases to convey what the agreements, to us, clearly and unambiguously convey.

■ We conclude that in this instance, plaintiff made a unilateral mistake by not memorializing the terms of the agreement as she understood them. The plaintiff signed three separate release forms, and the purported agreement on subrogation of the medical bills appeared in none of the agreements. "It is a basic tenet of contract law that the contracting parties can make as 'good a deal or as bad a deal' as they see fit * * *." *Durfee v. Ocean State Steel, Inc.,* 636 A.2d 698, 703 (R.I.1994). While plaintiff's counsel is persuasive that the bargained-for consideration was not adequate to cover plaintiff's costs, mutual mistake has not been adequately demonstrated.

■ Counsel for plaintiff additionally asserts that the motion justice did not allow him a sufficient opportunity to present testimony to prove mutual mistake. The defendant counters that plaintiff's counsel was scheduled to appear at three hearings, but in fact appeared personally at only one hearing; associates from his firm appeared at the other two hearings. At the last hearing, when the associate argued for another opportunity to get counsel to appear "down here and testify live," the following colloquy ensued:

"[THE COURT]: Was he not aware of the date today?

"[ COUNSEL]: Correct.

"[THE COURT]: We selected this date with him being present the last time. I know he's busy, but so are we. He picked the date. I read the file. * * * I would have been happy to listen to his argument. No disrespect to you, Counsel, he was the one involved in this. He is the one that had extended bench conferences on this. I think if he wanted to make any more arguments or argue any more than what he filed with the Court I'm not going to continue it for his convenience to come in again. It was down today for decision. If he wanted to do something, perhaps he should have done it today."

The matter had been continued from a previous date. The parties previously had argued their respective positions and had been given an opportunity to submit memoranda. The hearing justice opined that the affidavits could not be any clearer, and saw no basis for having an evidentiary hearing. We concur with her assessment, and detect no abuse of her discretion.

In this case, we need not go beyond the clear and unambiguous terms of the agreements. We conclude that any testimony presented by plaintiff's counsel would furthermore be inadmissible as parol evidence submitted to modify the terms of the indemnification contract and the two releases.

### Conclusion

After reviewing the record in this matter, the memoranda filed by both parties, as well as their oral arguments, we are convinced that ample evidence supports the motion justice's decision in this case. The plaintiff did not meet her burden of demonstrating mutual mistake.

Accordingly, for the reasons stated herein, we affirm the judgment of the Superior Court, to which we remand the record in this case.