April 14, 2022

**Supreme Court**

No. 2020-163-Appeal.
(PC 16-1113)

(Dissent begins on Page 21)

| | | |
|---|---|---|
| Family Dollar Stores of Rhode Island, Inc. | : | |
| v. | : | |
| Justin B. Araujo et al. | : | |

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Family Dollar Stores of Rhode     :
          Island, Inc.

v.                :

Justin B. Araujo et al.       :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Robinson, for the Court.** The plaintiff, Family Dollar Stores of Rhode Island, Inc. (Family Dollar), appeals from the Providence County Superior Court's denial of its motion for summary judgment and the grant of summary judgment in favor of the defendant, Justin Araujo.[1] (Mr. Araujo is the defendant in this action for declaratory judgment; he was the complainant in the case before the

---

[1] Before Family Dollar filed the motion for summary judgment that is at issue in this appeal, an entirely separate issue was decided by this Court. *Family Dollar Stores of Rhode Island, Inc. v. Araujo*, 204 A.3d 1089 (R.I. 2019) (*Family Dollar I*). After the opinion deciding that issue was issued, the case was remanded to the Superior Court for that court to determine "the validity and enforceability of the contractual settlement agreement * * *." *Id.* at 1100. It is the Superior Court's ruling as to the latter issue which is the subject of the instant appeal.

Rhode Island Commission for Human Rights, which we discuss *infra*.) The only issue before this Court is whether a release agreement signed by Mr. Araujo is, as Family Dollar contends, all-encompassing—or whether, as Mr. Araujo contends, it is much more narrow in scope. For the reasons set forth in this opinion, we hold that the release unambiguously constitutes a waiver by Mr. Araujo of his right to pursue *all* claims that he could make against Family Dollar. Accordingly, it is our opinion (1) that the hearing justice erred in granting summary judgment in favor of Mr. Araujo; and (2) that the hearing justice should have granted Family Dollar's motion for summary judgment.

This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After carefully considering the parties' arguments (both written and oral) and after reviewing the record, we are of the opinion that cause has not been shown and that the appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we reverse the judgment of the Superior Court.

# I

# Facts and Travel

Because this is not the first time that this Court has dealt with the litigation in which the instant parties are involved,[2] we shall focus in this opinion only on the facts and issues that are of immediate pertinence.

## A

## The Evolution of the Controversy

On January 18, 2012, Mr. Araujo filed a workers' compensation claim against his employer (Family Dollar), alleging that he had been injured on January 17, 2012 during the course of his employment. Consequently, Mr. Araujo began to receive weekly workers' compensation benefits from January 18, 2012 to August 12, 2012 and then beginning again on April 4, 2013—both periods of benefits relating to the same January 17, 2012 injury. Thereafter, on September 12, 2014, Mr. Araujo's attorney sent a letter to Family Dollar in which he alleged that he had been constructively discharged from his employment with Family Dollar on February 12, 2014. In his letter, Mr. Araujo also informed Family Dollar of his intent to "file a

---

[2] For a full recitation of the factual history and earlier procedural travel of this case, we refer the reader to our opinion in *Family Dollar I*. The initial paragraphs of the "Facts and Travel" section of that opinion summarize the essential occurrences that constitute the context for the issues which we are called upon to address in this appeal. *Family Dollar I*, 204 A.3d at 1091-93.

complaint with the Rhode Island Human Rights Commission" because, as Mr. Araujo alleged, Family Dollar had discriminated against him on the basis of an illness completely unrelated to his workers' compensation injury.

Thereafter on September 23, 2014, Mr. Araujo entered into a written settlement agreement with Family Dollar and Sedgwick Claims Management Services, Inc. (Sedgwick).[3]  As part and parcel of that settlement agreement, Mr. Araujo signed a broadly worded release (the Release), which included the following pertinent language:

> "KNOW ALL MEN THAT I, JUSTIN ARAUJO, in consideration of the sum of TWENTY THOUSAND ($20,000.00) DOLLARS * * * paid by SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. on behalf of FAMILY DOLLAR STORES OF RHODE ISLAND, INC., the receipt whereof is hereby acknowledged, do hereby remise, release and forever quitclaim unto the said SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. and FAMILY DOLLAR STORES OF RHODE ISLAND, INC., * * * all manner of actions, debts, dues, claims and demands, both in law and in equity, and more especially any claim that I might have * * * under the provisions of an agreement or decree relative to workers' compensation paid to me during the period of total and partial disability resulting from an injury sustained by me in the course of my employment on or about 01/17/2012, or under the provisions of the Workers' Compensation Act * * *.  This release waives any other claims I could make against my employer, its agents, assigns, or successors, including, but not limited to, claims under the Americans with Disabilities Act, claims with the Rhode Island

---

[3]     This is the "contractual settlement agreement" referred to in *Family Dollar I*, 204 A.3d at 1100.  *See* footnote 1, *supra*.

Governor's Commission on the Handicapped, Rhode Island Commission for Human Rights, Equal Employment Opportunity Commission, FETA [*sic*], United States Department of Labor, United States Department of Justice, Workers' Compensation Court, or any other agencies, tribunals, commissions, or courts."

On November 28, 2014, *some two months after having executed the Release*, Mr. Araujo filed a charge of discrimination with the Rhode Island Commission for Human Rights, alleging that Family Dollar had discriminated against him on the basis of the above-referenced illness that was completely unrelated to his workers' compensation injury.[4]  The charge of discrimination alleged that the final discriminatory act had taken place on February 12, 2014 (*i.e.*, several months *before* Mr. Araujo signed the Release).

On March 10, 2016, Family Dollar filed a complaint in the Superior Court seeking a declaration that the parties had "entered into a valid and enforceable settlement agreement" which released Family Dollar from all claims that Mr. Araujo had set forth in his charge of discrimination.[5]  Family Dollar also alleged that, by

---

[4]     At the time of the signing of the Release, Mr. Araujo was represented by counsel.  The record indicates that Mr. Araujo was represented by a different attorney in connection with his charge of discrimination.

[5]     The Rhode Island Commission for Human Rights was permitted to intervene as a defendant in this case pursuant to an order issued by the Superior Court on May 31, 2016.  Nonetheless, the Commission has presented no argument to us with respect to either of the summary judgment motions which are at issue in this appeal.

filing his charge with the Rhode Island Commission for Human Rights, Mr. Araujo had materially breached the terms of the Release and, therefore, was also liable for breach of contract.

**B**

**The Motions for Summary Judgment**

**1. Family Dollar's Motion for Summary Judgment**

On May 31, 2019, Family Dollar filed a motion for summary judgment, asserting that the Release, by virtue of its explicit and broad language, encompassed not only Mr. Araujo's workers' compensation claim, but also "any other claims" which he "could" make against Family Dollar—including, *inter alia*, claims within the jurisdiction of the Rhode Island Commission for Human Rights. Family Dollar contended that the Release was "unambiguous" and, as such, "must be enforced according to its terms." On July 26, 2019, Mr. Araujo filed an objection along with a cross-motion for summary judgment, contending that the Release was ambiguous because it was "reasonably susceptible to different constructions * * *." Mr. Araujo contended that, because of the alleged ambiguity, extrinsic evidence should be "admissible to aid in the Release's interpretation" and that said evidence would reveal that the Release was not intended to encompass his charge of discrimination.

At the hearing on its motion for summary judgment, Family Dollar argued that the Release unambiguously precluded Mr. Araujo from pursuing his charge of

discrimination because the language of the Release expressly references the fact that, in addition to having waived his workers' compensation claim, Mr. Araujo had waived his right to assert "any other claims" that he could make against Family Dollar. It was Family Dollar's contention that, under the language of the Release, said "other claims" included but were not limited to: (1) claims filed with the Rhode Island Commission for Human Rights; and (2) claims filed pursuant to various statutes that relate to civil rights and employment discrimination. Mr. Araujo, on the other hand, contended that the Release was ambiguous because it did not specifically reference a "date of injury" or a "disability discrimination" claim. Mr. Araujo also argued that, even though the Release purported to waive "any other claims made against [Mr. Araujo's] employer," the failure to identify a specific person or entity as being the just-referenced "employer" rendered it ambiguous.

The hearing justice found that "[a] reasonable person could read [the Release] the way Family Dollar suggests," but she further found that, "[a] reasonable person could read it as Mr. Araujo suggests[.]" The hearing justice ruled that, because "reasonable people could differ" as to the meaning of the language set forth in the Release, the Release was ambiguous; on that basis, the hearing justice denied Family Dollar's motion for summary judgment. The hearing on Mr. Araujo's cross-motion for summary judgment was continued to allow Family Dollar an opportunity to submit additional briefing.

## 2. Mr. Araujo's Cross-Motion for Summary Judgment

A hearing on Mr. Araujo's cross-motion for summary judgment was held on November 13, 2019. Despite the hearing justice's prior ruling that the Release was ambiguous, Family Dollar continued to insist that the Release was "unambiguous on its face;" it contended that "the only piece of evidence necessary for the [Superior] Court to rule on the validity of the release is the release itself." For his part, Mr. Araujo argued that the extrinsic evidence[6] to which he made reference was "so overwhelming, so compelling, [and] so undisputed" that the hearing justice should find that the parties never intended the Release to preclude Mr. Araujo's charge of discrimination. After reviewing the arguments of the parties and the extrinsic evidence upon which Mr. Araujo relied, the hearing justice ruled that "despite what

---

[6] It is not ordinarily necessary to describe extrinsic evidence in the face of a contract that we deem to be clear and unambiguous on its face. *See Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 746 (R.I. 2009) ("[W]e have consistently held that [i]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids.") (internal quotation marks omitted). In this instance, however, for the sake of completeness, we shall list the extrinsic evidence which Mr. Araujo referenced in his cross-motion for summary judgment. That evidence consisted of the following: (1) the petition for commutation filed with the Workers' Compensation Court; (2) Family Dollar's answer to the petition for commutation; (3) the letter dated September 12, 2014 from Mr. Araujo's counsel to Family Dollar, which details Mr. Araujo's "various employment law claims;" (4) the October 6, 2014 transcript of the hearing held before the Workers' Compensation Court relative to the petition for commutation; (5) the commutation order and final decree entered by the Workers' Compensation Court; and (6) the charge of discrimination filed by Mr. Araujo with the Rhode Island Commission for Human Rights.

the language in the release says, * * * it was not intended to include the discrimination claim." Accordingly, the hearing justice granted summary judgment in favor of Mr. Araujo and entered a judgment declaring that the Release did not cover Mr. Araujo's claims of discrimination. A timely notice of appeal was filed on February 18, 2020.

## II

### Standard of Review

This Court reviews cross-motions for summary judgment in a *de novo* manner. *E.g.*, *Peloquin v. Haven Health Center of Greenville, LLC*, 61 A.3d 419, 424 (R.I. 2013). We have consistently stated that, when "reviewing the Superior Court's judgment on the parties' motions for summary judgment, we * * * apply the same standards as those used by the [hearing justice]." *Id.* (internal quotation marks omitted). We have further stated that summary judgment is appropriate when, "viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, [the court] determines that there are no issues of material fact in dispute, and the nonmoving party is entitled to judgment as a matter of law." *Walsh v. Lend Lease (US) Construction*, 155 A.3d 1201, 1204 (R.I. 2017) (internal quotation marks omitted). All the while, we remain mindful of the fact that "summary judgment is an extreme remedy that warrants cautious application." *Gardner v. Baird*, 871 A.2d 949, 952 (R.I. 2005). Finally, it must be borne in mind

that "the party who opposes the motion carries the burden of proving by competent evidence the existence of a disputed material issue of fact * * *." *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 557 (R.I. 2009) (internal quotation marks omitted).

## III

## Analysis

## A

## Pertinent Principles of Contract Law

This Court has often recognized that, because "[a] release is a contractual agreement, * * * the various principles of the law of contracts govern the judicial approach to a controversy concerning the meaning of a particular release." *Young*, 973 A.2d at 558. It is also well settled that the issue of "[w]hether the terms of a contract are ambiguous is a question of law." *Sturbridge Home Builders, Inc. v. Downing Seaport, Inc.*, 890 A.2d 58, 62 (R.I. 2005); *see also Gorman v. Gorman*, 883 A.2d 732, 738 n.8 (R.I. 2005) ("It is a fundamental principle of contract law that the existence of ambiguity *vel non* in a contract is an issue of law to be determined by the court."). As such, this Court reviews a hearing justice's ruling on the issue of contractual ambiguity "on a *de novo* basis." *Young*, 973 A.2d at 558.

In determining whether or not a contract is ambiguous, this Court views the agreement "in its entirety," giving the words their plain and "ordinary meaning."

- 10 -

*Sturbridge Home Builders, Inc.*, 890 A.2d at 62-63; *see Young*, 973 A.2d at 558. The question of ambiguity focuses upon "whether the language has only one reasonable meaning when construed * * * *in an ordinary common sense manner*." *Sturbridge Home Builders, Inc.*, 890 A.2d at 63 (emphasis in original) (internal quotation marks omitted). Moreover, when undertaking this inquiry, "the court should refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity * * * where none is present." *Young*, 973 A.2d at 559 (internal quotation marks omitted). Ultimately, "[w]here * * * the document is unambiguous, the language of the release itself is controlling in determining the intent of the parties and governs the legal consequences of its provisions." *Nelson v. Ptaszek*, 505 A.2d 1141, 1143 (R.I. 1986) (internal quotation marks omitted); *see also Roadepot, LLC v. Home Depot, U.S.A., Inc.*, 163 A.3d 513, 521 (R.I. 2017) ("It is virtually an immutable principle of law that [t]he language employed by the parties to a contract is the best expression of their contractual intent * * *.") (quoting *Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 746 (R.I. 2009)); *Furtado v. Goncalves*, 63 A.3d 533, 537 (R.I. 2013) ("[I]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids.") (internal quotation marks omitted).

# B

## Application of the Foregoing Principles

The plain language of the Release deals with two separate matters. The first sentence of the Release unambiguously waives Mr. Araujo's right to bring against Family Dollar "any claim that [he] might have * * * under the provisions of an agreement or decree relative to workers' compensation paid to [him] during the period of total and partial disability resulting from an injury sustained by [him] in the course of [his] employment on or about 01/17/2012, or under the provisions of the Workers' Compensation Act * * *." The second sentence of the Release, in equally unambiguous language, similarly waives Mr. Araujo's right to assert "*any other claims*" against his "employer" "including, but not limited to, claims under the Americans with Disabilities Act, claims with the Rhode Island Governor's Commission on the Handicapped, *Rhode Island Commission for Human Rights*, Equal Employment Opportunity Commission, FETA [*sic*], United States Department of Labor, United States Department of Justice, Workers' Compensation Court, or any other agencies, tribunals, commissions, or courts." (Emphasis added.)

The unambiguous language of the Release clearly expresses the parties' intent to address both Mr. Araujo's workers' compensation claim and also *any other claims* that he could conceivably make against Family Dollar (and Sedgwick). *See Young*, 973 A.2d at 560 ("It is firmly settled that the intent of the parties to a written contract

- 12 -

is contained in the writing itself. * * * When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement.") (internal quotation marks omitted); *Vincent Co. v. First National Supermarkets, Inc.*, 683 A.2d 361, 363 (R.I. 1996) ("When a contract is unambiguous, * * * the intent of the parties becomes irrelevant."). Accordingly, we are unable to read the Release other than as a very broad release whereby Mr. Araujo waived his right to assert *all* claims that he could make against Family Dollar.[7] Significantly, none of the "other claims" set forth in the Release are cognizable in the Workers' Compensation Court.

## C

### The Remaining Issues

#### 1. *Aetna Casualty & Surety Co. v. Farr* is Readily Distinguishable

Our decision in the instant case is not at all inconsistent with our ruling in *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379 (R.I. 1991). In that case, the defendant, one Shirley Farr, was injured in an automobile accident while driving a

---

[7] Even if Mr. Araujo were to contend that he had not actually read the contents of the Release, such a contention would be unavailing. *See, e.g.*, *F. D. McKendall Lumber Co. v. Kalian*, 425 A.2d 515, 518 (R.I. 1981) ("[A] party who signs an instrument manifests his assent to it and cannot later complain that he did not * * * understand its contents."); *see also D'Antuono v. CCH Computax Systems, Inc.*, 570 F. Supp. 708, 714 (D.R.I. 1983) (Selya, J.) (acknowledging the just-referenced principle and commenting that "[w]ere it otherwise, signed contracts would be little more than scraps of paper, subject to the selective recollection of the parties in interest").

- 13 -

company car during the course of her employment. *Id.* at 379-80. She filed a claim against her employer for workers' compensation benefits, and she eventually signed a release running to both her employer and Aetna Casualty & Surety Co. (Aetna).[8] *Id.* at 380. In actuality, Aetna was both the workers' compensation insurer and also the insurer of the company car that Ms. Farr had been operating at the time of the accident. *Id.* Several months after signing the release, Ms. Farr "instituted an action to recover uninsured-motorist benefits, pursuant to the Aetna policy * * *." *Id.* In due course, Aetna proceeded to commence a declaratory judgment action alleging that, by executing the release, Ms. Farr had "forfeited all causes of action arising

---

[8]     As quoted in this Court's opinion in *Aetna Casualty & Surety Co. v. Farr*, 594 A.2d 379 (R.I. 1991), the release signed by Ms. Farr read in pertinent part as follows:

> "[Ms. Farr does] hereby remise, release, discharge and forever quit-claim unto the said payors, their successors and assigns, any and all manner of actions, causes of actions dues [*sic*], claims and demands, both in law and equity, and under the Workers' Compensation Act of the State of Rhode Island (including any other injuries and all claims for specific compensation and/or disfigurement) but especially those claims arising out of a certain loss as a result of the happening which occurred on August 12, 1983, while in the employ of the above employer-payor, which has been the subject matters [*sic*] of certain proceedings under said Workers' Compensation Act, as amended, between me and said employer-payor and of certain proceedings for commutation between me and both payors before the Workers' Compensation Commission."
> *Farr*, 594 A.2d at 381.

from the automobile accident," including her right to recover uninsured motorist benefits under the Aetna policy. *Id.*

The release in *Farr* made reference only to Ms. Farr's workers' compensation claim and made no mention whatsoever of *any other claims*, including a claim for uninsured motorist benefits. *Id.* at 381. This Court ruled that, "[b]ecause of the inclusion in the release of * * * specific language relating to workers' compensation and the exclusion of any such specific reference to uninsured-motorist claims, the effect of the release [was] unclear." *Id.* Accordingly, this Court ruled that "[a]mbiguity may be inferred from this omission;" and, because of that ambiguity, the case was remanded for an evidentiary hearing. *Id.* at 381, 382.

Our holding in *Farr* is not at all inconsistent with the case at bar. The Release executed by the parties in this case is certainly not silent as to the waiver of possible claims in addition to the workers' compensation claim. Unlike the situation in *Farr*, there is in this case no "omission" from which "ambiguity may be inferred." *Id.* at 381. Rather, the Release states in plain language that Mr. Araujo waives his right to assert *any other claims* that he could make against Family Dollar. The release in *Farr* did not include such broad language, and it made no reference to the uninsured motorist coverage; rather, it contained language which specifically referred to claims which were "the subject matter[] * * * of certain proceedings under said Workers' Compensation Act * * *." *Id.* In addition, the Release in the instant case (unlike the

- 15 -

one at issue in *Farr*) details some of the conceivable claims that Mr. Araujo agreed to waive; and it further states that Mr. Araujo's waiver is "not limited to" those claims. It is noteworthy that it is specifically stated in the Release that the claims being waived include those that might fall under the jurisdiction of the Rhode Island Commission for Human Rights.[9] As such, it is unequivocally clear to us that the Release unambiguously precludes Mr. Araujo from pursuing a charge of discrimination with the Rhode Island Commission for Human Rights.

### 2. The Terms of the Release

Mr. Araujo avers that the Release is ambiguous because it states that the consideration "was to be paid by Sedgwick * * *, which was the entity tasked with administering the workers' compensation claim only * * *." It is a basic principle of contract law, however, that it matters not from or to whom consideration moves;

---

[9] The following explicit words in the Release at issue in this case convincingly demonstrate that Mr. Araujo was waiving his right to seek relief from the Rhode Island Commission for Human Rights:

> "This release waives any other claims I could make against my employer, it agents, assigns, or successors, including, but not limited to, claims under the Americans with Disabilities Act, claims with the Rhode Island Governor's Commission on the Handicapped, Rhode Island Commission for Human Rights, Equal Employment Opportunity Commission * * *."

The contrast with *Farr*, cited *supra*, could not be more stark. In *Farr*, it was held that an omission created an ambiguity; and, therefore, fact-finding was held to be necessary. *Farr*, 594 A.2d at 381, 382. Here, there is no ambiguity.

- 16 -

what is required is that "the performance or the return promise is bargained for"—and that is just what occurred here. 1 E. Allan Farnsworth, *Contracts* § 2.03 (4th ed. 2022); *see Cardoza v. Pereira*, 53 R.I. 460, 462, 167 A. 532, 532 (1933); *see also John Deere Co. v. F.L. Broomfield*, 803 F.2d 408, 410 (8th Cir. 1986) ("Payment made to a third person at the promisor's request constitutes consideration."). Accordingly, the fact that it was Sedgwick that paid consideration to Mr. Araujo on behalf of Family Dollar has no bearing on the validity of the Release, nor does it render it ambiguous.

Mr. Araujo also contends that the Release is ambiguous because the payment of consideration in the amount of twenty thousand dollars could only be "construed as solely representing the value of [his] workers' compensation claim * * *." In our view, however, a reading of the entire Release clearly shows that the twenty thousand dollars was exchanged in consideration of Mr. Araujo's promise to release Family Dollar from *all* claims that he might have had against it at the time the Release was signed.[10]

---

[10] Whether or not Mr. Araujo was well-advised to sign the Release in exchange for that sum of money is not the issue before us. *See Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004) ("If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written."); *see also Pearson v. Pearson*, 11 A.3d 103, 110 (R.I. 2011); *Mansolillo v. Employee Retirement Board of the City of Providence*, 668 A.2d 313, 317 (R.I. 1995).

Mr. Araujo also alleges that the phrase "other claims," which is contained within the second sentence of the Release, is ambiguous. We are unpersuaded by this contention. When read in the context of the entire Release, its meaning is clear. *See Sturbridge Home Builders, Inc.*, 890 A.2d at 62-63. As discussed above, the Release waives both Mr. Araujo's workers' compensation claims and also his right to assert further hypothetically possible claims (some examples of which are mentioned in the Release).

Mr. Araujo further argues that the Release is ambiguous because it does not contain specific citations to the employment-related provisions that are the subject of his multi-faceted waiver. His contention in that regard verges on the frivolous, as even a quick glance at the actual language of the Release will indicate. While the Release does not make specific reference to statutes by their numerical designations, it clearly and unambiguously states that Mr. Araujo waives, *inter alia*, his right to pursue "claims with the * * * Rhode Island Commission for Human Rights"—which, we note, would include charges of discrimination. *See* G.L. 1956 § 28-5-13; G.L. 1956 § 42-87-5. As such, the failure to numerically reference each statutory section does not render the Release ambiguous.

Lastly, Mr. Araujo contends that the Release is ambiguous because it does not define the term "employer" in the second sentence of the Release, which states: "This release waives any other claims I could make against my employer * * *."

- 18 -

This argument is without merit. The term "my employer," when considered in the context of the two-page release document, definitively rebuts Mr. Araujo's contention that there is some ambiguity as to the identity of the "employer" being referenced.[11] It is clear from the four corners of the Release that the reason for the existence of that document was a desire to settle Mr. Araujo's workers' compensation claim as well as any other claims that Mr. Araujo may have had against Family Dollar. It goes without saying that workers' compensation claims involve an allegedly injured employee and his or her employer. Accordingly, when the reader bears in mind that employment-related context and when the same reader notes that the Release proceeds to address "other claims" immediately after addressing the workers' compensation claim of Mr. Araujo (Family Dollar's former employee), it is clear to us beyond peradventure that the reference in the Release to "my employer" must necessarily be deemed to relate to the same entity that was being released from its employee's workers' compensation claim—namely, Family Dollar. It is noteworthy that no other "employer" had had any involvement in the matter.

---

[11] *See Smith v. United States*, 508 U.S. 223, 229 (1993) ("Language, of course, cannot be interpreted apart from context. The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it.").

As is so often the case, taking into account the entirety of a contractual agreement dispels any asserted ambiguity. *See Sturbridge Home Builders, Inc.*, 890 A.2d at 62 ("When determining whether a contract is ambiguous, the agreement is viewed in its entirety * * *."); *Rivera*, 847 A.2d at 284 ("[I]t is well established that a document must be viewed in its entirety * * *."). It is our definite opinion that, when the instant Release is read in its entirety, the term "employer" therein refers to Mr. Araujo's employer, Family Dollar, and to no other entity or person.

As we have held with respect to Mr. Araujo's contention about the consideration for the Release and about the Release's reference to "other claims," we similarly perceive absolutely no ambiguity with respect to the identity of the "employer" referenced in the Release. In our judgment, the Release is entirely free from any ambiguity.

## IV

## Conclusion

For the reasons set forth in this opinion, we reverse the judgment of the Superior Court, and order that judgment be entered in favor of Family Dollar on its declaratory judgment claim. The record may be returned to that tribunal.

**Justice Long, with whom Chief Justice Suttell joins, dissenting.** Because I believe that the release is ambiguous, I respectfully dissent.

In reviewing the Superior Court's decision on Family Dollar's motion for summary judgment, this Court must view the facts and all reasonable inferences therefrom in the light most favorable to Mr. Araujo. *E.g.*, *Walsh v. Lend Lease (US) Construction*, 155 A.3d 1201, 1204 (R.I. 2017). I submit that the following undisputed facts are therefore pertinent to this appeal.

Family Dollar hired Mr. Araujo as a customer service representative/clerk on June 12, 2007, and promoted him to the position of store manager a little more than a year later. Mr. Araujo was managing a store in Pawtucket, Rhode Island, on January 17, 2012, when he suffered a workplace injury to his neck and back. Mr. Araujo received workers' compensation benefits from January 18, 2012, until August 12, 2012, when he returned to work. Mr. Araujo experienced a recurrence of his neck and back injuries in March 2013 and thereafter pursued further workers' compensation benefits.

By letter dated September 12, 2014, counsel for Mr. Araujo asserted that Family Dollar had constructively discharged Mr. Araujo on February 12, 2014, after Mr. Araujo's supervisor learned that Mr. Araujo had been diagnosed with HIV and allegedly took several adverse employment actions against Mr. Araujo because of

that diagnosis.[1]  Counsel for Mr. Araujo advised Family Dollar that Mr. Araujo intended to file a complaint with the Rhode Island Commission for Human Rights and the United States Equal Employment Opportunity Commission for alleged violations of various disability, civil rights, and employment laws.

On September 23, 2014, Mr. Araujo signed a petition for commutation of workers' compensation benefits pursuant to G.L. 1956 § 28-33-25.  Mr. Araujo also signed the release at issue in this case, which was drafted by a representative of Family Dollar.  The release is a type of contract, and thus principles of contract law govern its interpretation. *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 558 (R.I. 2009).  This Court must review the release as a whole and give the language used "its plain, ordinary and usual meaning." *W.P. Associates v. Forcier, Inc.*, 637 A.2d 353, 356 (R.I. 1994).  "A contract is ambiguous when it is 'reasonably susceptible of different constructions.'" *Young*, 973 A.2d at 558 n.6

---

[1] Mr. Araujo's decision to disclose his diagnosis for purposes of this litigation was his decision to make.  I suspect that he made the decision purposefully and after careful consideration, particularly in light of the allegation, contained in the letter dated September 12, 2014, that Mr. Araujo's supervisor "searched [Mr. Araujo's belongings] and discovered Mr. Araujo's [medical] papers containing his HIV positive diagnosis."  I respect Mr. Araujo's decision and refer to his diagnosis with the intention of empowering him as he continues to live with HIV. *See* Centers for Disease Control and Prevention, *Ways to Stop HIV Stigma and Discrimination*, https://www.cdc.gov/stophivtogether/hiv-stigma/ways-to-stop.html#Stigma-Language-Guide ("The words we use matter.  Learn how to talk openly about HIV and stigma in a way that can help empower those living with HIV.") (last visited April 12, 2022).

(quoting *Westinghouse Broadcasting Co., Inc. v. Dial Media, Inc.*, 122 R.I. 571, 579, 410 A.2d 986, 991 (1980)). Additionally, "ambiguity may be inferred from the omission of an explicit reference to a claim in a release[.]" *W.P. Associates*, 637 A.2d at 356 (citing *Aetna Casualty & Surety Company v. Farr*, 594 A.2d 379, 381 (R.I. 1991)).

Applying these principles of contract law to the instant matter, I begin by viewing the document, simply titled "RELEASE" (hereinafter the Release), in its entirety, giving the language used "its plain, ordinary and usual meaning." *W.P. Associates*, 637 A.2d at 356. In the first sentence of the Release, the plain language establishes that Mr. Araujo, in exchange for $20,000, waived any claims he could make against Family Dollar and Sedgwick related to workers' compensation benefits paid for a specific workplace injury. That specific injury was sustained by Mr. Araujo on January 17, 2012, in the course of his employment. In the second sentence of the Release, the plain language establishes that Mr. Araujo "waive[d] *any other claims* [he] could make against [his] employer, its agents, assigns, or successors, including, but not limited to, claims under the Americans with Disabilities Act, claims with the Rhode Island Governor's Commission on the Handicapped, Rhode Island Commission for Human Rights, Equal Employment Opportunity Commission, FETA [*sic*], United States Department of Labor, United States Department of Justice, Workers' Compensation Court, or any other agencies,

- 23 -

tribunals, commissions, or courts." (Emphasis added.) Finally, the Release concludes with Mr. Araujo's representation that he has not applied for or ever received Medicare or Social Security benefits, which information is relevant for lump-sum commutation in lieu of periodic workers' compensation payments. *See* Medicare Secondary Payer provisions of the Social Security Act of 1965, 42 U.S.C. § 1395y(b)(2)(A)(ii); 20 C.F.R. § 404.408(g) (2021).

It is my view that the language in the Release waiving "any other claims * * * including, but not limited to, claims under the Americans with Disabilities Act, claims with the * * * Rhode Island Commission for Human Rights, [and] Equal Employment Opportunity Commission" is reasonably susceptible of different constructions and is therefore facially ambiguous. *Young*, 973 A.2d at 558 n.6 (stating that a contract is ambiguous when reasonably susceptible of more than one interpretation). On the one hand, that language can be interpreted, as Family Dollar asserts, as a general, all-encompassing release that incorporates any possible disability discrimination claims, including Mr. Araujo's pending HIV-status disability discrimination claim, which arose more than two years after he sustained his workplace injury. On the other hand, it is also reasonable to interpret "any other claims" as referring to any possible disability discrimination claims arising *as a result of* the January 17, 2012 workplace injury, especially in light of the reference to that specific workplace injury in the first sentence of the Release.

- 24 -

The latter interpretation aptly describes the circumstances this Court faced in *Young*, where this Court held that a broadly-worded release governed the settlement of both a plaintiff-employee's workers' compensation claim for a work-related shoulder injury and her disability discrimination claim resulting from the same injury. *Young*, 973 A.2d at 555-56, 559. In *Young*, the plaintiff-employee waived "all claims * * * *in any way growing out of any personal injuries * * * resulting or to result from any and all incidents or injuries occurring during* [*the plaintiff-employee's*] *employment*[.]" *Young*, 973 A.2d at 556 (emphasis added). The Court noted the significance of the connection between the disability and the work-related injury, *id.* at 556 n.3, and stated that "[i]t is clear * * * that [the] plaintiff[-employee]'s physical handicap discrimination claim came into being *as a result of* the personal injury that she sustained at the workplace; in other words, the physical handicap discrimination claim came into being *as a result of* the workplace injury." *Id*. at 559.

While *Young* evinces a reasonable, alternative interpretation of the language in the present case waiving "any other claims * * * including, but not limited to, claims under the Americans with Disabilities Act, claims with the * * * Rhode Island Commission for Human Rights, [and] Equal Employment Opportunity Commission[,]" there is a critically important distinction in Mr. Araujo's case that underscores the ambiguity of the Release: Mr. Araujo's disability discrimination

claim did not come into being "*as a result of*" his workplace injury. *See Young*, 973 A.2d at 559. Mr. Araujo has alleged that Family Dollar discriminated against him because of his HIV status, a claim with no factual nexus to his January 2012 workplace injury and one that arose more than two years after the workplace injury, when he allegedly suffered a constructive termination.

Like the Court in *Farr*, cited previously, I deem the omission of any explicit reference to a known claim to be significant. "Despite Aetna's apparent knowledge that [the employee] intended to pursue her claim for uninsured-motorist benefits during the pendency of the workers' compensation action, the release mentions *specifically* only 'those claims arising out of a certain loss as a result of the happening which occurred on August 12, 1983, while in the employ of the above employer-payor, which has been the subject matters [*sic*] of certain proceedings under said Workers' Compensation Act.'" *Farr*, 594 A.2d at 381. Family Dollar knew, during the pendency of Mr. Araujo's workers' compensation claim, that Mr. Araujo intended to pursue his HIV-status disability discrimination claim before the Rhode Island Commission for Human Rights. Nevertheless, the representative from Family Dollar who drafted the Release mentioned only the workers' compensation claim with specificity.

Mr. Araujo's HIV-status disability discrimination claim was not a "further hypothetically possible claim[]" as the majority suggests, but a known claim arising

after his January 17, 2012 workplace injury, from a separate, unrelated alleged act or occurrence by his employer. *Cf. Nelson v. Ptaszek*, 505 A.2d 1141, 1142, 1143 (R.I. 1986) (holding that language in a release stating that the plaintiff released the defendant "from any and all claims * * * *arising from any act or occurrence up to the present time*" clearly "envinc[ed] an intent to waive all claims" and therefore encompassed an unspecified claim for contribution) (emphasis added). In my view, the failure to reference the pending HIV-status disability discrimination claim with specificity was a material omission that renders the effect of the Release unclear and "necessitates a factual determination regarding the intent of the parties." *Farr*, 594 A.2d at 381; s*ee Lockridge v. The University of Maine System*, 597 F.3d 464, 469 n.3 (1st Cir. 2010) ("A 'material' fact is one 'that might affect the outcome of the suit under the governing law.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

It is also important to note that, although Mr. Araujo signed the Release as "EMPLOYEE," the Release identifies neither Sedgwick nor Family Dollar as the employer. In fact, viewing the document in its entirety, at no point does the Release define Mr. Araujo's employer or reference a petition for commutation for workers' compensation benefits. *Cf. Young*, 973 A.2d at 556 (quoting release in full, which identifies only one potential employer and references a petition for commutation). Additionally, there is no consideration set forth for Mr. Araujo's general release of

"any other claims," which only serves to emphasize that the Release is facially incomplete and therefore ambiguous.

Because the Release is facially ambiguous, I turn to the undisputed extrinsic evidence to determine the parties' intent.[2] *See W.P. Associates*, 637 A.2d at 356; *Waterman v. Waterman*, 93 R.I. 344, 349-50, 175 A.2d 291, 294 (1961). Specifically, I look to Mr. Araujo's petition for commutation, filed in the Workers' Compensation Court (WCC) pursuant to § 28-33-25; the answer filed by Family Dollar and Sedgwick in response; the transcript of the commutation hearing held in the WCC on October 6, 2014; and the commutation order entered on October 6, 2014. The commutation order states that "[u]pon payment of the above, respondents shall be forever released from further liability to the petitioner for any and all injuries suffered by the petitioner while employed by the respondent, known or unknown, *under the Workers' Compensation Act*, and shall be fully discharged of record." (Emphasis added.)

The undisputed extrinsic evidence, properly considered in light of the facial ambiguity of the Release, demonstrates that Family Dollar paid $20,000 in

---

[2] In opposing Mr. Araujo's motion for summary judgment, Family Dollar did not "identify any evidentiary materials already before the court and/or present its own competent evidence demonstrating that material facts remain[ed] in genuine dispute." *Doe v. Gelineau*, 732 A.2d 43, 48 (R.I. 1999). Rather, Family Dollar again argued that the Release was unambiguous, and that no further evidence was necessary to determine the intent of the parties.

consideration of the workplace injury and the commutation of future weekly indemnity benefits. The parties agreed to include in the waiver any potential claims arising under the Workers' Compensation Act only.

Ambiguities in a contract are construed against the drafter. *E.g.*, *Fryzel v. Domestic Credit Corporation*, 120 R.I. 92, 98, 385 A.2d 663, 666-67 (1978). I therefore construe the release of "any other claims" against Family Dollar, and I conclude that the Release did not extend to Mr. Araujo's disability discrimination claim related to his HIV status. Accordingly, it is my opinion that Mr. Araujo did not waive his known disability discrimination claim by virtue of signing the Release, and that the trial justice's decision, and the resulting judgment, should therefore be affirmed.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Family Dollar Stores of Rhode Island, Inc. v. Justin B. Araujo et al. |
| **Case Number** | No. 2020-163-Appeal. (PC 16-1113) |
| **Date Opinion Filed** | April 14, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Eric B. Mack, Esq.<br>Matthew D. Strauss, Esq. |
| | For Defendant:<br><br>Richard A. Sinapi, Esq.<br>Danilo A. Borgas, Esq.<br>Kate C. Brody, Esq. |