July 17, 2025

Sharon L. Cunningham          :

v.          :

Kieran G. Cunningham.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| Sharon L. Cunningham | : |
| :--- | :--- |
| v. | : |
| Kieran G. Cunningham. | : |

Present: Suttell, C.J., Goldberg, Robinson, and Long, JJ.

### O P I N I O N

**Chief Justice Suttell, for the Court.** The defendant, Kieran G. Cunningham, appeals from a Family Court order sanctioning the defendant and awarding the plaintiff, Sharon L. Cunningham, attorneys' fees arising from a post-divorce proceeding.[1] Kieran advances one principal argument on appeal: The hearing justice abused her discretion in imposing the sanction. In the alternative, Kieran argues that the attorneys' fees awarded as a result of the sanction are excessive. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record,

---

[1] For clarity, we refer to both parties by their first names. No disrespect is intended.

- 1 -

we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the order of the Family Court.

## I

## Facts and Travel

Sharon and Kieran were married on June 19, 1994. Sharon filed a complaint for divorce in February 2019. Thereafter, Kieran filed an answer and counterclaim for divorce from Sharon. During the course of these divorce proceedings, Sharon and Kieran entered into a marital settlement agreement (MSA or the agreement) that was incorporated but not merged into the final decree of divorce. Pertinent to the case at bar, the agreement contained provisions concerning the use and anticipated eventual sale of Sharon and Kieran's home in Middletown, Rhode Island. The parties modified these provisions twice, both times in writing and by mutual agreement.

The first modification changed the agreement to include, *inter alia*, the following provision:

> "The parties jointly own real estate located [in] Middletown, Rhode Island. This property is the marital domicile, and the Wife and minor children reside therein. The Wife shall have exclusive use and possession of the aforesaid marital domicile (EXCLUDING THE HUSBAND THEREFROM) *to the exclusion of the Husband, who may not enter the property without written consent of the Wife * * *,* until the house is sold pursuant

- 2 -

to this paragraph. Provided however, that the Husband may do so-called 'curbside' pick up and drop off of the children at the marital domicile and the same shall not be considered a violation of this provision * * *." (Emphasis added to highlight modification.)

This modification also altered the timeline for the sale of the home by providing that the property was to be listed for sale by April 1, 2024, but could not be sold before July 1, 2024, absent Sharon's agreement.

Eventually, a decision pending entry of final judgment was filed on March 10, 2020, in Sharon and Kieran's divorce proceeding. This decision incorporated, but did not merge, the agreement. A final judgment of divorce later entered on August 26, 2021.

The current controversy between the parties appears to have begun in January 2024, when Kieran's counsel sent an email to Sharon offering to purchase the former marital domicile at a price to be determined by an appraisal. There then followed an exchange of electronic communications between counsel, in which Sharon expressed her intent to sell the real estate in accordance with the terms and conditions of the agreement, as modified, and she added that the Family Court did not have the authority to modify the agreement that had been incorporated but not merged in the final judgment.

On March 6, 2024, Kieran filed a motion in the Family Court to have the marital domicile appraised. In his motion, Kieran averred that his "decision to

- 3 -

possibly buy the property from [Sharon was] largely dependent upon an appraisal * * *." Kieran went on to assert that Sharon had "refused to allow [an appraisal] and [the agreement] should be modified to accommodate" such an appraisal. Sharon objected to this motion, arguing that the agreement, as twice properly modified, does not "provide[] for or make[] any reference whatsoever to [Kieran] having the option to buy out [Sharon]'s interest in the * * * property." Further, Sharon asserted that Kieran was "unilaterally attempting to coerce" her to sell the home to him "in direct contravention to the parties' [MSA] and modifications thereto," which did not provide "[Kieran] the option of buying out [Sharon]'s interest in said real estate." Ultimately, Sharon asked the Family Court to deny Kieran's motion, sanction him, and award reasonable attorneys' fees.

Kieran then filed an amended motion to allow an "inspection and appraisal of [the] former marital property * * *." In his amended motion, Kieran averred that "[t]he parties' [MSA] is not a bar to his request as Sharon Cunningham asserts. That the [MSA] does not provide for Mr. Cunningham to buy out Mrs. Cunningham is not the same as the [MSA] barring him from so doing." Kieran further argued that "Rule 34(a)(2) of the [Family Court] Rules of Domestic [Relations] Procedure allows for inspection requests upon real property of exactly the sort that [Kieran] is making here."

A hearing was held on May 30, 2024; however, no transcript of that hearing has been provided to this Court. Subsequently, on June 18, 2024, an order entered stating that Kieran had "no right of first refusal to purchase" the marital property under the terms of the agreement. Additionally, this order provided that Kieran had "until June 20, 2024 to decide if he want[ed] to purchase the subject real estate for the sum of $1.2M * * *."[2] The hearing justice continued Sharon's motion to dismiss and for sanctions to a later hearing.

On June 21, 2024, the hearing justice heard arguments regarding Kieran's amended motion to inspect and appraise the property and Sharon's objection and motion to dismiss and for sanctions. At that hearing, the hearing justice made clear that the house was "going to be sold pursuant to the terms of the [MSA]." The hearing then proceeded with regard to Sharon's motion for sanctions against Kieran for making an improper motion.

At the hearing, Kieran testified that it was not his "intention to amend or try to change" the terms of the marital settlement agreement "in any way." Rather,

---

[2] The lack of a transcript from the May 30, 2024 hearing leaves us with unanswered questions as to some of the details in the June 18, 2024 order, such as the June 20, 2024 date by which Kieran had to purchase the home and the $1.2 million sum he had to pay for it. Without the transcript from this hearing, which resulted in the entry of the June 18, 2024 order, we cannot divine why these directives were included in the order. Because the transcript from this hearing was not transmitted to this Court, and because the parties have not advanced any arguments based upon this June 18, 2024 order, we will not address it further.

Kieran testified, the wording in his motion that the "agreement should be modified" was "referring to an agreement outside, not having anything to do with the marital settlement agreement[,]" and that he was not seeking to modify the agreement.

Shortly thereafter, the hearing justice explained that because the agreement "was incorporated but not merged," it did "not allow the [c]ourt to modify anything," and the agreement instead "remains a separate contract." The hearing justice also explained that she believed that Kieran understood this because Kieran and Sharon had already successfully implemented "two written modifications" to the agreement where the parties "clearly recognized that there was a meeting of the minds and a modification of the contract."

The hearing justice also reasoned that Kieran was "asking for relief that [was] not part of [his] contract." She stated that, although Kieran represented that he did not want to change the contract, he nevertheless was "asking the [c]ourt to change a contract that * * * [it had] no power to change."

Later in the hearing, Sharon's counsel submitted an affidavit in support of Sharon's motion for $4,275 in attorneys' fees, which included all work completed that stemmed from Kieran's first motion to modify the agreement.

Before the close of the hearing, the hearing justice issued a bench decision. The hearing justice determined that Kieran's motion to appraise the property was "clearly * * * seeking to * * * ask the [c]ourt to modify the agreement, which clearly

- 6 -

th[e] [c]ourt cannot do." Further, the hearing justice found that Kieran, "in violation of the terms of th[e] agreement, filed a motion that he didn't have a right to file. He caused [Sharon] to experience significant attorneys' fees." As such, the hearing justice stated that she was "satisfied that the attorneys' fees and sanctions are appropriate based on the filing of these motions that were not appropriate and did, in fact, cause financial harm and expense to [Sharon]." After calculating the total fees that were related to the motions, the hearing justice ordered that Kieran was "to reimburse [Sharon] for her attorneys' fees, based on the frivolous motion, of $6,125." An order to that effect entered on July 8, 2024. Kieran filed a premature, yet valid, notice of appeal on July 1, 2024.

## II

### Standard of Review

"This Court has long adhered to the 'American rule' that requires each litigant to pay its own attorney's fees absent statutory authority or contractual liability." *McCollum v. McCollum*, 287 A.3d 26, 31 (R.I. 2023) (quoting *America Condominium Association, Inc. v. Mardo*, 140 A.3d 106, 115 (R.I. 2016)). "We have repeatedly stated that, in conducting a review of a trial justice's award of attorneys' fees, the issue of whether there exists a *basis* for awarding attorneys' fees generally is legal in nature, and therefore" this Court's "review of such a ruling is *de novo*." *Id.* (quoting *America Condominium Association*, 140 A.3d at 115). This

Court has "further stated that only if it is determined that there is such a legal basis, then this Court will review a motion justice's actual award of attorneys' fees for an abuse of discretion." *Id.* at 31-32 (quoting *America Condominium Association*, 140 A.3d at 115).

### III

### Discussion

On appeal, Kieran argues that the sanctions imposed upon him by the Family Court requiring him to pay attorneys' fees to Sharon "are clearly wrong because they were imposed for a motion never argued." Kieran further asserts that the hearing justice "overlooked that [she] was not dealing with the original motion, but rather [she] was dealing with an amended motion that did not seek the relief the Family Court found so objectionable."

As discussed *supra*, Kieran indeed amended his motion to appraise and inspect the property. His original motion stated that Kieran's "decision to possibly buy the property from [Sharon] is largely dependent upon an appraisal and [Sharon] has refused to allow one and said [*marital settlement*] *agreement should be modified* to accommodate any consequence hereof." (Emphasis added.) Kieran's amended motion instead states that his

> "decision to possibly buy the property from [Sharon] is largely dependent upon an inspection and appraisal and she has refused to allow one. The parties' [MSA] is not a bar to his request as Sharon Cunningham asserts. That the

- 8 -

> [MSA] does not provide for Mr. Cunningham to buy out
> Mrs. Cunningham is not the same as the [MSA] barring
> him from so doing. Indeed, Rule 34(a)(2) * * * allows for
> inspection requests upon real property of exactly the sort
> that [Kieran] is making here."

Kieran asserts that his amended motion did not seek to modify the MSA and therefore provides no basis for sanctions. Additionally, Kieran claims that his "amended motion explicitly relied on [Family Court Rule of Domestic Relations Procedure] 34(a)(2), rather than specifically seek any potential modification of the parties' agreement."[3] According to Kieran, the hearing justice imposed sanctions based upon the original motion for an inspection and appraisal, rather than the amended motion.

At the outset of the hearing, the hearing justice informed Kieran that he was "asking for relief that is not part of [the agreement]." Kieran told the hearing justice that he was "not asking for [her] to change anything." In response, the hearing justice explained that Kieran was indeed asking for a modification of the MSA, as she pointed out that "[t]hat's what the motions are." The hearing justice further noted that Kieran could "call it what [he] want[ed], but [he was] asking the Court to

---

[3] Kieran maintains that his amended motion for an inspection and appraisal is "expressly" permitted by Rule 34 of the Family Court Rules of Domestic Relations Procedure. That rule, however, pertains to discovery, the production of documents, and entry onto land for the inspection of property, after having been served a request to do so. *See* R. Dom. Rel. P. 34. Accordingly, Kieran misapplied Rule 34, and his arguments that rely on Rule 34 are unavailing and need not be addressed further.

change a contract * * * that [it had] no power to change." While Kieran was testifying as to his belief that his amended motion was "not seeking to modify the agreement[,]" the hearing justice commented that "the motions say what they say." Ultimately, the hearing justice found that Kieran, "in violation of the terms of th[e] agreement, filed a motion that he didn't have a right to file. He caused [Sharon] to experience significant attorneys' fees." As such, the hearing justice stated that she was "satisfied that the attorneys' fees and sanctions are appropriate based on the filing of the[] motions that were not appropriate and did, in fact, cause financial harm and expense to [Sharon]."

When confronted with a similar situation, this Court has "set forth the standard under which Rule 11 sanctions may be imposed in a domestic relations proceeding." *Heal v. Heal*, 762 A.2d 463, 469 (R.I. 2000). Indeed, this Court has opined that

> "[w]hile participation by an attorney in a pleading to gain an unfair advantage for property distribution or otherwise has always been inappropriate, we recognize that an attorney may not be held responsible for the false communications of a client; nor do we countenance a requirement that an attorney engage in a difficult cross-examination of his or her client prior to the initiation of litigation or the filing of a claim or counterclaim. However, there are situations in which an attorney knows or, in the exercise of due diligence, *should know* that a claim is without merit or is intended to harass or delay a party opponent. As officers of this Court, attorneys ought to know whether a pleading is intended to be abusive or to further delay or whether it is based on the good faith belief that the claim has some merit." *Id.* at 470.

Furthermore, Rule 11 of the Family Court Rules of Domestic Relations Procedure requires that

> "every pleading, written motion, and other paper of a party represented by an attorney shall be personally signed by at least one (1) attorney of record in the attorney's individual name[.] * * * The signature of an attorney, self-represented litigant, or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry the pleading, motion, or other paper is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that pleading, motion, or other paper is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed [said] pleading, motion, or other paper, a represented party, or both, any appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."

Upon our review of the record, we find that Kieran knew or should have known that his amended motion seeking to inspect and appraise the property was not "well grounded in fact" and was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law * * *." R. Dom. Rel. P. 11. As the hearing justice found, Kieran incorrectly maintains that his amended motion did not seek to modify the MSA. Kieran sought relief in the Family

- 11 -

Court to take an action not permitted by the agreement. Any argument to the contrary is unavailing. Kieran's attempt to simply describe the language of his amended motion as not seeking to modify the agreement fails. As the hearing justice succinctly stated, "the motions say what they say." The agreement did not grant Kieran the ability to inspect and appraise the property as a prerequisite to his "decision to possibly buy the property * * *." He was no doubt entitled to submit an offer to purchase the marital domicile, but he was in no different position than any other prospective buyer. Therefore, we hold that there was a basis for the imposition of the sanction and award of attorneys' fees.

We now turn to the question of whether the hearing justice abused her discretion in the actual award. Before this Court, Kieran argues that the amount of attorneys' fees awarded should "be reduced to the $500.00 or so properly allocated to dealing with such a single withdrawn motion rather than the punitive imposition of over six thousand dollars for dealing with such[.]" Furthermore, Kieran summarily submits that the award of $6,125 is "*prima facie* excessive."

When considering the amount of an actual award of attorneys' fees, this Court has said that "it is well settled that attorneys are competent to testify as experts in determining what is a reasonable charge for legal services rendered." *Tri-Town Construction Company, Inc. v. Commerce Park Associates 12, LLC*, 139 A.3d 467, 480 (R.I. 2016) (brackets omitted) (quoting *Colonial Plumbing & Heating Supply*

- 12 -

*Co. v. Contemporary Construction Co.*, 464 A.2d 741, 744 (R.I. 1983)). Furthermore, this Court has held "that the affidavits or testimony * * * must be from counsel who is a member of the Rhode Island Bar and who is not representing the parties to the action in which fees are sought." *Id.*

In the case at bar, Sharon's attorney submitted an affidavit from another attorney, who is a member of the Rhode Island Bar, in which the affiant stated that the requested attorneys' fees "are reasonable and comport with the criteria set forth in Rule 1.5 of the [Rhode Island] Rules of Professional Conduct." When considering the amount of attorneys' fees to award, the hearing justice was "satisfied that the attorneys' fees and sanctions [were] appropriate based on the filing of these motions that were not appropriate and did, in fact, cause financial harm and expense to [Sharon]." Kieran, through counsel, offered a "rebuttal" to the amount awarded, arguing that the fees should be decreased because Sharon's attorney was fifteen minutes late to the hearing. Ultimately, the hearing justice concluded that the fees were reasonable, and that Sharon's attorney's tardiness was "taken into consideration in the entire amount of $6,125" because he had not included time spent drafting and responding to correspondences related to this matter in his bill. Accordingly, we hold that the hearing justice did not abuse her discretion in her actual award of $6,125 in attorneys' fees.

# IV

## Conclusion

For the foregoing reasons, we affirm the order of the Family Court. The papers in this case may be remanded to that tribunal.

Justice Lynch Prata did not participate.

**Justice Robinson, dissenting.**

I respectfully dissent.

I am quite frankly unable to comprehend how an award of attorneys' fees in this case can be reconciled with the "American Rule,"[1] which is our venerable and frequently cited guidepost with respect to whether or not attorneys' fees should be assessed against the non-prevailing party in litigation.[2] The essence of the American

---

[1] *See generally* 20 Am. Jur. 2d *Costs* § 48 (May 2025 Update).
   The history of the American Rule is comprehensively discussed in the United States Supreme Court's opinion in the case of *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240 (1975).

[2] We have unambiguously stated that "The 'American Rule' provides that, apart from some exceptions, litigants bear their own attorneys' fees and costs absent contractual liability or statutory authority." *Dauray v. Mee*, 109 A.3d 832, 845 n.17 (R.I. 2015) (citing *Moore v. Ballard*, 914 A.2d 487, 489 (R.I. 2007)); *see also Clean Harbors Environmental Services, Inc. v. 96-108 Pine Street LLC*, 286 A.3d 838, 841-42 (R.I. 2023) (noting that "[t]his Court has long adhered to the American Rule that requires each litigant to pay its own attorney's fees absent statutory or contractual liability") (internal quotation marks omitted); *Danforth v. More*, 129

Rule has been concisely and accurately summarized as follows in a unanimous opinion of this Court that was rendered decades ago and that remains as true today as it was then:

> "The general rule in Rhode Island governing the recoverability of attorneys' fees is that absent specific statutory authority or contractual liability therefor, counsel fees may not be taxed as part of the costs of litigation." *Quill Company, Inc. v. A.T. Cross Company*, 477 A.2d 939, 943 (R.I. 1984).

It is a basic principle in our law regarding attorneys' fees that "[t]he issue of whether there exists a *basis* for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is *de novo*." *Blue Cross & Blue Shield of Rhode Island v. Najarian*, 911 A.2d 706, 709 (R.I. 2006) (emphasis in original); *see also Cullen v. Albion Fire District*, 333 A.3d 499, 501 (R.I. 2025) (mem.).[3]  As I read the record in the instant case and most notably the hearing justice's Order of July 8, 2024 (which ordered defendant "to pay to the [p]laintiff's attorney forthwith,

---

A.3d 63, 72 (R.I. 2016) (noting that "[t]his Court has staunchly adhered to the American Rule") (internal quotation marks and brackets omitted).

[3]  "Only if it is determined that there is such a basis, then this Court will review a motion justice's actual award of attorneys' fees for an abuse of discretion." *Blue Cross & Blue Shield of Rhode Island v. Najarian*, 911 A.2d 706, 709 (R.I. 2006); *see also Clean Harbors*, 286 A.3d at 842.

the sum of $6,125.00"), the hearing justice cited *no basis whatsoever* for deciding to award attorneys' fees to plaintiff's attorney.[4]

The just referenced Order does refer to the fact that defendant asked the Family Court itself to "modify the parties' Marital Settlement Agreement." And the same Order proceeds to correctly state that the Family Court "cannot legally provide" that requested relief.[5] In my view, however, that misguided request for judicial relief was not the only consideration that should have been taken into account by the hearing justice in determining whether or not there was a *basis* for awarding attorneys' fees—a necessary precondition to deciding, in the exercise of the justice's sound discretion, whether or not to award such fees.

---

[4] It is true that, in the course of the lengthy hearing on plaintiff's motion for attorneys' fees as a sanction, the hearing justice did, in passing, characterize defendant's first motion as "frivolous." However, that word does not appear in the twelve-paragraph Order approved and signed by the hearing justice on July 8, 2024. And, in any event, I do not consider the first motion to have been frivolous even though it was the product of error on the part of defendant's counsel.

[5] If plaintiff wished to have the Marital Settlement Agreement modified (as had happened twice previously), he should have sought to have his ex-wife agree to a modification rather than seeking relief from the Family Court. *See Gorman v. Gorman*, 883 A.2d 732, 740 (R.I. 2005). His error was in not doing so, opting instead to seek Family Court intervention. It is my view that, given the strictures of the American Rule, an error of this sort should not result in an award of attorneys' fees as a sanction. Errors happen in the course of litigation, and mere error without more should not be an Open Sesame to an award of attorneys' fees.

The hearing justice never stated or even suggested that defendant had engaged in contumacious conduct. *Cf. Moran v. Rhode Island Brotherhood of Correctional Officers*, 506 A.2d 542 (R.I. 1986); *see generally Moore v. Ballard*, 914 A.2d 487, 489 (R.I. 2007) (noting that one of the exceptions to the American Rule allows for attorneys' fees to be awarded as "a sanction for contumacious conduct").

Similarly, the hearing justice never found that defendant had acted in bad faith, and I can find nothing in the record that is in any way indicative of bad faith. *See Quill Company, Inc.*, 477 A.2d at 944.

Moreover, and quite significantly, the hearing justice did not impose sanctions pursuant to Rule 11 of the Family Court Rules of Domestic Relations Procedure. *Cf. Smith v. Smith*, 207 A.3d 447, 451 (R.I. 2019) ("Based on the record before us, which clearly establishes that the defendant acted in bad faith with the purpose and intent to harass the plaintiff and filed numerous frivolous motions that forced the plaintiff to incur additional legal fees, we see no abuse of discretion in imposing the sanction.").

Finally, the fairly scant Rhode Island case law that exists relative to the American Rule suggests that "close calls" should be made in favor of the Rule's applicability. *See Quill Company, Inc.*, 477 A.2d at 944 ("A claim is not made in 'bad faith' so as to shift the burden of costs as long as the claim has some legal and

factual basis when considered in light of the reasonable belief of the individual making the claim.").

I need not go on at length. It is undeniable, as the majority opinion indicates, that defendant's first motion which essentially asked the Family Court to modify the Marital Settlement Agreement was based on an error regarding that court's authority—since the Family Court has no such power. *See Gorman v. Gorman*, 883 A.2d 732, 740 (R.I. 2005). However, a legal error without more is not a valid basis for assessing attorneys' fees against a litigant. *See, e.g.*, *Bennett v. Steglia*, 300 A.3d 558, 577 (R.I. 2023) ("This Court has consistently held that, even where a party proves unsuccessful on the merits, justiciable issues may yet exist."); *Danforth*, 129 A.3d at 72. It is also noteworthy that defendant quickly retreated from the error contained in his first motion by filing a second motion, even though that second motion was also somewhat flawed.

As I read the record, it is reasonable to infer that defendant genuinely had an interest in purchasing what had once been the family home.[6] Nothing in the Marital Settlement Agreement prohibited him from doing that. The mere fact that the Marital Settlement Agreement was specific as to some particulars does not mean that the parties were forbidden to seek changes in that agreement. *See generally* 2A

---

[6]    In fact, it was represented during oral argument that negotiations regarding the sale of the home at 215 Oliphant Lane were ongoing.

- 18 -

Norman J. Singer & Shambie Singer, *Sutherland and Statutory Construction* § 47:25 (Nov. 2024 Update) (stating that the *expressio unius* maxim "does not mean that anything not required is forbidden").

This is a close[7] and unusual little case. It is regrettable that the attorneys' fees issue could not have been resolved in an amicable manner. It is also regrettable that what appears to be so liliputian a controversy could not have been resolved without the need for a lengthy hearing (forty-nine transcript pages) in the Family Court followed by briefing and oral argument before this Court. *See Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 186 (R.I. 2008) ("It is very much an important part of the policy of the courts of Rhode Island (and courts in general) to encourage the amicable settlement of disputes, whether by mediation or otherwise."); *see also Skaling v. Aetna Insurance Company*, 799 A.2d 997, 1012 (R.I. 2002).

Accordingly, I respectfully dissent.

---

[7] I readily concede that whether the award of attorneys' fees in this case was appropriate constitutes a close question. In fact, for a while I contemplated concurring in the majority opinion—albeit in a "*dubitante*" manner. In the end, however, I concluded that I must record my disagreement with what I consider to be a deviation from the centuries-old and consistently followed "American Rule"— even where the question is close and the amount at issue is almost *de minimis*.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Sharon L. Cunningham v. Kieran G. Cunningham. |
| **Case Number** | No. 2024-242-Appeal.<br>(N 19-742) |
| **Date Opinion Filed** | July 17, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Newport County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Karen Lynch Bernard |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>William J. Lynch, Esq.<br>For Defendant:<br><br>Sean M. McAteer, Esq. |